*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0296P (6th Cir.)
File Name: 02a0296p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROSALYN CAFFEY,
    *Plaintiff-Appellant,*

        *v.*                          No. 00-5983

UNUM LIFE INSURANCE CO.,
    *Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 93-00443—Robert L. Echols, Chief District Judge.

Submitted: June 12, 2002

Decided and Filed: September 3, 2002

Before: BOGGS, SILER, and MOORE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** John M. Scannapieco, BOULT, CUMMINGS, CONNERS & BERRY PLC, Nashville, Tennessee, for Appellee. Rosalyn Caffey, Morrow, Georgia, pro se.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. In this pro se appeal, the plaintiff Rosalyn Caffey challenges a number of rulings by the district court in her suit to recover long-term disability benefits under an employee welfare plan. The defendant UNUM Life Insurance Company ("UNUM"), which administers claims for the plaintiff's long-term disability insurance plan, initially denied Caffey's disability claim. Caffey filed suit against UNUM under the Employee Retirement Income Security Act ("ERISA") to compel payment of benefits. The district court granted summary judgment to UNUM, but the Sixth Circuit reversed. On remand, the district court granted summary judgment to Caffey on her claim to recover benefits. On appeal, Caffey argues: (1) that the district court erred in ruling that her state-law claims were preempted by ERISA; (2) that the district court erred in finding that she was not entitled to certain equitable relief; (3) that the district court erred in failing to impose a statutory penalty for UNUM's failure to supply certain plan information on request; (4) that the district court erred in its calculation of prejudgment interest; (5) that the district court erred in declining to award postjudgment interest on its award of legal fees and prejudgment interest; (6) that the district court's findings of fact concerning UNUM's bad faith were in error; and (7) that the district court omitted one month's payment of disability benefits in calculating its award. After reviewing the briefs and the record of the proceedings below, we determine that the district court erred only in failing to order payment of postjudgment interest on its prejudgment interest and attorney fees awards. We therefore **AFFIRM IN PART**, **REVERSE IN PART,** and **REMAND** to the district court solely for the purpose of entering an appropriate award for postjudgment interest.

We therefore conclude that the district court did not err in determining that plaintiff's first payment was due in August 1990.

## III.  CONCLUSION

Based upon the foregoing discussion, we **AFFIRM** the district court's rulings in all respects but its failure to order payment of postjudgment interest.  We therefore **REVERSE IN PART** and **REMAND** to the district court for the limited purpose of entering an appropriate award for postjudgment interest.

## I.  FACTS AND PROCEDURE

### A.  Factual Background

The facts giving rise to the instant dispute are fully set forth in a prior opinion of this court, *Caffey v. UNUM Life Ins. Co.*, 1997 WL 49128 (6th Cir.).  The relevant facts are summarized below.

Caffey worked as a financial analyst for the Mansur Financial Group, Inc. ("Mansur") from September 11, 1989, until June 29, 1990.  As a Mansur employee, Caffey participated in the company's long-term disability benefits plan (the "Plan").  UNUM was responsible for claims administration under the Plan.  The Plan contained a provision excluding benefits for certain pre-existing conditions.  The pre-existing conditions provision stated:

> This policy will not cover any disability:
>
> 1.  caused by, contributed to by, or resulting from a pre-existing condition; and
>
> 2.  which begins in the first 12 months after an insured's effective date.
>
> A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services, including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

Plan at L-BEN-5.

Caffey's "effective date," after which she was eligible for benefits under the Plan, was October 12, 1989.  Caffey applied for long-term disability benefits on July 14, 1990, citing severe headaches and vision problems.  UNUM reviewed Caffey's medical records and discovered that Caffey had received treatment for similar symptoms on August 23, 1989.  In fact, Caffey's medical records revealed that she had

been receiving treatment for hormone-related headaches and visual anomalies for many years. Physicians who examined Caffey at the time of her initial claim, including Dr. Valerie Purvin, believed that Caffey's symptoms were attributable to her long-standing history of migraine. *Caffey*, 1997 WL 49128, at *1.

Caffey's condition failed to improve and she began to experience new symptoms such as memory loss and motion sickness. On March 27, 1991, Caffey was diagnosed with lupus erythematosus on the basis of a positive test for a DNA antibody characteristic of the disease. Based upon this new information, Dr. Purvin reassessed her previous determination that Caffey's symptoms were due to migraine, and wrote a letter stating that "the headaches for which [Caffey] was treated in July and August of 1990 must have been a manifestation of her lupus rather than a flare-up of her previous migraine." Dr. Purvin Letter, August 6, 1992. Dr. Jose Tord, another physician who treated Caffey, also wrote a letter distinguishing Caffey's previous history of migraine from the onset of lupus in June of 1990.

A UNUM staff physician reviewed Caffey's medical history and determined that her lupus was a pre-existing condition, because the migraines and visual anomalies experienced in the summer of 1990 were identical to symptoms reported in August of 1989. Accordingly, UNUM denied Caffey's request for benefits in a letter dated May 22, 1991. Caffey appealed UNUM's decision. Caffey supplied UNUM with letters from Dr. Tord and Dr. Purvin, which fixed the onset of lupus in the summer of 1990. After additional review of Caffey's medical records, UNUM's staff physician concluded that the diagnosis of lupus was incorrect; and alternatively, if Caffey did have lupus, that it was impossible to determine retroactively the date of onset of the disease to be in the summer of 1990.

## B. Procedural History

Following UNUM's denial of benefits, Caffey filed suit in the United States District Court for the Middle District of

claim for long-term disability benefits in 1990. Caffey's brief expresses the concern that the district court's findings of fact will be res judicata in a pending Indiana state lawsuit to recover her health and life insurance benefits. We gather from the record that Caffey is referring to the district court's finding in its June 6, 2000, order that plaintiff was not entitled to additional equitable relief, such as reinstatement of her health and life insurance, because UNUM did not act in bad faith in initially denying her claim.

We think that it was unnecessary for the district court to consider the factual issue of UNUM's bad faith. As noted above, ERISA does not provide for the type of "equitable" relief sought by the plaintiff, regardless of the insurer's bad faith. Therefore, the district court's consideration of this factual matter was entirely unnecessary to resolve Caffey's equitable relief claims. We simply note here that we in no way rely on the district court's finding regarding UNUM's good faith in reaching our decision.

## G. Omission of Payment

Caffey also claims that the district court omitted one month's payment in its award calculation. Caffey contends that the district court incorrectly assumed that the first benefit payment was due in August, whereas she contends that the first payment was due on July 30, 1990. UNUM claims that disability benefits did not begin to accrue until July 30, 1990, and therefore no benefits were due on that date.

After reviewing the record, we find no support for Caffey's claim. Under the express terms of the Plan, no benefits are payable during the "elimination period," which is "a period of consecutive days of disability" beginning on the first day of disability. Plan at L-DEF-1. The Plan specifications state that the "elimination period" is thirty days. Thus, no benefits were owing under the Plan until thirty days after the onset of plaintiff's disability. On the original claim form filed by the plaintiff with UNUM, she lists the first day of her disability as July 1, 1990. Consequently, under the plain terms of the Plan, plaintiff was not owed any benefits on July 30, 1990.

We initially conclude that Caffey is entitled to postjudgment interest on the district court's award of legal expenses for the period between the district court's March 2, 2000, judgment and UNUM's issuance of the original check remitting full payment of the court's legal expenses award. *Drabik* clearly established that postjudgment interest on an award of legal fees begins to run from the date of the initial judgment recognizing plaintiff's unconditional right to receive legal fees, not from the judgment that ultimately quantifies the fee award. 250 F.3d at 495. Thus, the district court erred in assuming that UNUM's payment prior to the June 6, 2000, order, in which the court quantified its earlier award of legal fees, precluded the plaintiff's claim for postjudgment interest. Under *Drabik*, postjudgment interest began to accrue when the district court initially granted plaintiff's request for legal expenses in its March 2, 2000, order.

We reject, however, plaintiff's argument that she is entitled to postjudgment interest for the time it took UNUM to issue a replacement check after being informed that plaintiff had lost the original check. The postjudgment interest statute provides that interest shall accumulate until "the date of payment." 28 U.S.C. § 1961(b). Caffey concedes that UNUM made full payment of the legal expenses award sometime before June 6, 2000. The fact that Caffey lost the check, through no fault of UNUM's, does not change the fact that payment had been made. We are aware of no authority holding that a defendant owes postjudgment interest for a delay in plaintiff's enjoyment of its payment when the delay is due to plaintiff's own conduct in losing the check. We therefore remand to the district court to enter an appropriate award for postjudgment interest on its award of attorney fees for the period from March 2, 2000, until the day of payment by UNUM with its initial check.

## F. District Court Findings of Fact

Caffey appeals the district court's factual finding that UNUM did not act in bad faith when it initially denied her

Tennessee on June 8, 1993. Caffey filed an amended complaint on January 12, 1995, alleging thirteen claims for relief. The claims are summarized as follows:

- **Count One** sought recovery of long-term disability benefits under ERISA.
- **Count Two** alleged breach of fiduciary duties under ERISA, violations of Indiana state insurance law, and common-law fraud arising from UNUM's processing of her benefits claim.
- **Count Three** alleged that UNUM failed to comply with plaintiff's requests for plan information in violation of 29 U.S.C. § 1024(b).
- **Count Five**[1] sought to remove UNUM as fiduciary of the Plan pursuant to 29 U.S.C. § 1109(a).
- **Count Six** claimed that UNUM should be equitably estopped from offsetting any recovery by the amount of Social Security payments received by plaintiff.
- **Count Seven** sought an injunction requiring UNUM to pay disability benefits in full.
- **Count Eight** sought prejudgment interest on all past due disability benefits.
- **Count Nine** sought payment of legal fees.
- **Count Ten** asserted a claim for "Damages for Vexation," seeking recovery of certain money damages under ERISA, 29 U.S.C. § 1132(g), and Indiana state law.
- **Counts Eleven** through **Fourteen** asserted various claims arising under common law doctrines of fraud, bad faith, negligence, and duress arising from UNUM's handling of plaintiff's benefits claim.

The parties filed cross-motions for summary judgment. The district court ruled in favor of UNUM. The court found that Caffey's various state-law claims were preempted by ERISA. The district court then determined that plaintiff could

---

[1]Caffey's complaint did not contain a Count Four.

not show that her lupus was not a pre-existing condition within the meaning of the Plan. Caffey filed a pro se appeal.

We reversed the district court's grant of summary judgment to UNUM. *Caffey*, 1997 WL 49128, at *3. We noted that the district court improperly placed the burden of proof on Caffey, whereas ERISA places the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator. *Id.* We further concluded that genuine issues of material fact existed as to whether the similarity between the symptoms reported by Caffey in August 1989 and those reported in the summer of 1990 established that Caffey's lupus was a pre-existing condition. We explained:

> Such facts include evidence that Caffey functioned ably with her hormone- related migraine for more than twenty years prior to the summer of 1990, when her headaches and visual problems so affected her that she was unable to work. Simultaneously, she began to experience unusual symptoms, such as motion sickness and memory loss. In explaining the nature of her condition, letters from two of Caffey's treating physicians support the argument that Caffey suffered from two distinct illnesses and that one of her maladies, lupus, did not set in until the summer of 1990.

*Id.* We remanded the case to the district court for further proceedings.

After the remand, UNUM requested that the district court remand to the plan administrator for reconsideration of Caffey's claim. The district court granted this motion. Upon reconsideration, UNUM determined that Caffey was eligible for long-term disability benefits and was not barred by the pre-existing condition provision of the Plan. Accordingly, UNUM mailed plaintiff three checks totaling $91,592, which represented UNUM's determination of the total amount of past-due disability benefits for the period beginning July 30, 1990, and ending January 29, 1999, reduced by the total amount of Social Security benefits received by Caffey during

incentives for defendants to delay unnecessarily the quantification of a prejudgment interest award. *See Drabik*, 250 F. 3d at 494-95. At the same time, awarding postjudgment interest for this period is not punitive, since UNUM enjoyed the use of the funds owing to the plaintiff, and presumably also earned a return on these funds, during the period of delay between the district court's initial award of prejudgment interest and the judgment quantifying that award. UNUM's loss is therefore no greater than if it had paid the full amount of prejudgment interest on the day it was awarded. *Skalka*, 178 F.3d at 429.

In sum, we conclude that postjudgment interest on the district court's prejudgment interest award began to accrue on March 2, 2000. Assuming, as UNUM represents in its brief, that payment was made approximately two weeks after the district court's September 29, 2000, order, the relevant period for which postjudgment interest is due is more than seven months. We therefore remand to the district court to enter an appropriate award for postjudgment interest on its prejudgment interest award.

We next consider plaintiffs' claim for postjudgment interest on the district court's award of legal expenses. We have previously held that the postjudgment interest statute requires payment of postjudgment interest on an award of legal expenses, just as with any other award of damages. *Drabik*, 250 F.3d at 484. The parties agree that UNUM issued a check to Caffey for the full amount of the legal expenses award sometime shortly before the district court's June 6, 2000, order quantifying the amount of its legal expenses award. Caffey claims that she misplaced the check and that UNUM subsequently waited fifty-seven days to issue a replacement check. The district court declined to award postjudgment interest under these circumstances, because payment was actually made before the June 6, 2000, judgment and because UNUM did not unreasonably delay in issuing a replacement check.

The district court's March 2 judgment "unconditionally entitle[d]" Caffey to an award of prejudgment interest. *Drabik*, 250 F.3d at 495. Although the amount of the prejudgment interest was not reduced to a "sum certain" at this time, it was more precisely defined than was the initial unquantified attorney fees award at issue in *Drabik*. Determining the value of an award of attorney fees involves proving factual matters such as the time and resources expended on a particular case. In contrast, once the district court determined the amount of benefits due and the relevant time period in its March 2, 2000, order, all that was left to determine was the appropriate rate of prejudgment interest. Thus, unlike *Drabik*, where the quantification of attorney fees required a wholly independent factual inquiry, the quantification of prejudgment interest in the instant case was merely a mathematical function of the court's prior rulings concerning the underlying damage amount and time period for which benefits were due. Although the precise amount of the award fluctuated somewhat as the court modified its method of calculation, these adjustments did not have the same effect as an order vacating the award in its entirety. *See Coal Res.*, 954 F.2d at 1275. Nor does it matter to our analysis that the district court's March 2 judgment was not an appealable final order. *Skalka*, 178 F.3d at 429.

We believe our holding best comports with the compensatory goal of the postjudgment interest statute. The district court's award of prejudgment interest compensated the plaintiff for the loss in the value of her benefit payments between the time when the payments were actually due and the time of judgment. The delay in payment of the prejudgment interest award resulted in some loss in the value of that award between the time of the judgment awarding plaintiff benefits and the payment of the prejudgment interest award. Thus, payment of postjudgment interest for the period of delay in payment of the prejudgment interest award is necessary to ensure that plaintiff's prejudgment interest award fully compensates her for the lost use of her benefit payments prior to judgment on the merits. Furthermore, requiring payment of postjudgment interest for this period reduces the

that period. UNUM began making regular monthly disability payments to the plaintiff at that time.

Caffey subsequently filed a motion for summary judgment in the district court requesting that the court enter judgment on the claims asserted in her amended complaint. In an order dated March 2, 2000, the district court granted plaintiff's motion in part and denied it in part. The court concluded that plaintiff's state-law claims and breach of fiduciary duty claims were preempted by ERISA.[2] In addition, the court rejected plaintiff's claims for compensatory and punitive damages on the ground that the type of relief requested is not available under ERISA. The court reserved its ruling as to plaintiff's claim that UNUM failed to disclose plan information on request, and instructed the plaintiff to prepare a list of all documents allegedly withheld. The court also granted summary judgment to the plaintiff on her claim for benefits under the Plan. The court concluded that no facts in the record showed that Caffey had received treatment for lupus prior to the summer of 1990. The court therefore found that the plaintiff was entitled to summary judgment on the pre-existing condition issue. Finally, the court awarded Caffey prejudgment interest and legal fees, but reserved the question of postjudgment interest pending a showing of a substantial delay between entry of judgment and payment to the plaintiff.

Subsequently, the district court considered a series of motions to modify and amend its March 2, 2000, order. A number of these motions were addressed in an order dated June 6, 2000. In that order, the district court granted UNUM's request to use a "blended" interest rate, based upon the method set forth in 28 U.S.C. § 1961, in calculating its

---

[2]The court concluded that all of Caffey's claims, including her state-law claims, were properly before it on summary judgment because it had granted leave to amend the complaint after it dismissed the state-law claims in the original complaint. Therefore, the court found that the state-law claims were still live, despite this court's approval of its dismissal of plaintiff's original state-law claims.

prejudgment interest award. Based upon this method, the court awarded plaintiff $40,608 in prejudgment interest. The court also considered plaintiff's claim for penalties based upon UNUM's violation of the disclosure requirements of 29 U.S.C. § 1024(b), as well as plaintiff's renewed request for certain equitable, compensatory, and punitive relief. The court dismissed plaintiff's § 1024(b) claim on the grounds that Caffey had failed to submit a list of the documents that were not disclosed within the time frame established by the court. Assuming it could consider plaintiff's late-submitted list of documents, the court found the plaintiff had not presented the court with any evidence that she had made a written request for the information to the plan administrator, as required by § 1024(b). The court likewise denied plaintiff's request for additional equitable relief on the grounds that it found no evidence of bad faith on UNUM's part in initially denying plaintiff's claim. Finally, the court awarded plaintiff legal expenses and costs totaling $10,297.

In response to further motions to amend, the court entered an additional order on September 29, 2000. In that order, the court endorsed the stream-of-benefits method of calculating prejudgment interest proposed by the defendant and accordingly reduced its original award of prejudgment interest to $25,721. The court also denied plaintiff's request for postjudgment interest on the court's award of legal expenses. The court noted that defendant had provided plaintiff with a check for the full amount awarded prior to its June 6, 2000, order, but plaintiff had misplaced the check. Finding no evidence that UNUM had acted in bad faith or intentionally delayed issuance of a replacement check, the court concluded that postjudgment interest was not warranted.

In its final order, entered on November 30, 2000, the court denied plaintiff's additional motions to reconsider, finding that these motions had been addressed in previous orders. The plaintiff filed a timely notice of appeal.

specified by the district court. Following several requests for extensions of time by the defendant, the district court entered a judgment on October 13, 1999, setting the precise amount of the attorney fees award. *Id.* at 484. We held that under § 1961(a), interest begins to accrue from the date of the award unconditionally entitling the plaintiff to fees, even though that award did not quantify the precise sum to which plaintiffs were entitled. *Id.* at 495. We concluded that "the Supreme Court's requirement [in *Kaiser*] that damages be ascertained in a meaningful way" was not "a requirement that such damages be reduced to a sum certain." *Id.* at 490. We explained:

> The [*Kaiser*] Court simply did not indicate that we must read into § 1961 a requirement that an award of attorney fees as part of a final judgment on the merits must first be quantified prior to accruing interest. When a judgment is vacated[, as in *Kaiser*,] it is legally void and unenforceable. A judgment, which has not been vacated or reversed, and which unconditionally awards reasonable attorney fees, is a valid and enforceable "money judgment." As such, reasonable attorney fees are "sufficiently ascertained."

*Id.* at 491 (citation omitted). We observed that "Congress enacted § 1961 with the knowledge that a 'money judgment' often included, either expressly or by legal implication, an award of reasonable attorney fees and costs;" and thus it was "logical to conclude that Congress intended that post-judgment interest on all damages, including reasonable attorney fees and costs, would run from entry of judgment on the merits." *Id.* at 494. We further observed that the rule we established would minimize incentives for losing parties to delay quantification of attorney fees awards. *Id.* at 494-95.

Based upon the foregoing discussion, we conclude that Caffey's prejudgment interest award was "sufficiently ascertained," such that postjudgment interest began to accrue, at the time of the district court's March 2, 2000, judgment. *See Coal Res.*, 954 F.2d at 1275; *Drabik*, 250 F.3d at 491.

established that postjudgment interest begins to accrue on a damages judgment from the original date of entry of that judgment, even if the amount of the judgment is subsequently modified by a "distinct" and "easily determined" amount, as long as the judgment is not completely set aside. *Id.*

In *Skalka*, we held that postjudgment interest begins to accrue from the date of the initial judgment entitling the plaintiff to damages, even if that judgment is not an appealable final order. 178 F.3d at 429. In *Skalka*, the district court initially entered judgment for the plaintiffs awarding damages on their federal age discrimination and contract claims, but reserved judgment on the plaintiffs' state-law discrimination claims until a later date. *Id.* at 428. We rejected the defendant's contention that the phrase "date of the entry of the judgment," as used in the postjudgment interest statute, 28 U.S.C. § 1961(a), referred only to final appealable judgments. *Id.* Thus, we held that "the better rule is for plaintiffs to be entitled to post-judgment interest from the date of entry of the initial, partial judgment on the ADEA and contract claims, even though that judgment was not yet appealable." *Id.* at 429. We observed that this rule avoided unnecessarily "depriv[ing] prevailing parties of the time value of their money." *Id.* We further observed that "the defendant will not be unfairly burdened by the accrual of interest because it will continue to have the use of the money" during the period between the entry of the initial partial judgment and the entry of a final order. *Id.*

In *Associated General Contractors of Ohio, Inc. v. Drabik*, we addressed the question of "[w]hether an award of attorney fees accrues interest, pursuant to 28 U.S.C. § 1961, from the date of the judgment that unconditionally entitles the prevailing party to reasonable attorney fees, or the date of the judgment quantifying that fee award." 250 F.3d 482, 485 (6th Cir. 2001). In *Drabik*, the district court entered an order on November 3, 1998, in which the court awarded judgment to the plaintiffs on the merits and ruled that plaintiffs were entitled to reasonable attorney fees and costs. *Id.* at 483. The plaintiffs filed an application for attorney fees on the date

## II. ANALYSIS

### A. State Law Preemption

Caffey disputes the district court's ruling that ERISA preempts various aspects of Indiana insurance law, including the tort of bad faith by an insurer. ERISA's preemption clause states that the act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted this clause to preempt state-law causes of action that would allow employee benefit plan beneficiaries to "obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Such an interpretation is necessary, the Court has instructed, to give effect to Congress's intent "that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Id.* at 52. We have recognized the broad sweep of ERISA's preemption provision in relation to state-law causes of action based upon an improper denial of benefits, noting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

Based upon the foregoing principles, we agree with the district court's conclusion that plaintiff's state-law claims are preempted by ERISA. All of plaintiff's state-law claims stem from the actions of UNUM in the processing of her claim for benefits. It is well established that such state-law tort and contract claims are preempted by ERISA. *See Pilot Life Ins. Co.*, 481 U.S. at 57 (state-law bad-faith claim preempted); *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 942 (6th Cir. 1995) (finding state-law claims for wrongful death, improper denial of benefits, medical malpractice, and insurance bad faith were preempted because defendants "were determining what benefits were available to Tolton under the plan"); *Cromwell*, 944 F.2d at 1276 (holding state-law claims of promissory estoppel, breach of contract, negligent

misrepresentation, and breach of good faith based on denial of benefits "are at the very heart of issues within the scope of ERISA's exclusive regulation"). In its most recent pronouncement on the subject, the Supreme Court again confirmed that any state law "provid[ing] a form of ultimate relief in a judicial forum that add[s] to the judicial remedies provided by ERISA. . . . patently violates ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 122 S. Ct. 2151, 2166 (2002). Indisputably, plaintiffs' state-law tort and contract claims seek judicial remedies for UNUM's failure to abide by the terms of the Plan beyond what is provided in ERISA. We therefore affirm the district court's dismissal of Caffey's state-law claims.

Caffey also makes a more limited claim in relation to the district court's preemption rulings. She asks this court to hold that ERISA does not preempt Indiana state-court decisions interpreting pre-existing condition clauses in insurance contracts. *See Modern Woodmen v. Miles*, 97 N.E. 1009 (Ind. 1912); *Indiana Comprehensive Health Ins. Ass'n v. Dye*, 531 N.E.2d 505 (Ind. Ct. App.1988). These decisions hold that treatment of a symptom, such as a headache, is not the same as diagnosis of a specific condition for the purposes of establishing a pre-existing condition. The district court reached the same legal conclusion in its interpretation of the pre-existing condition clause in the Plan. J.A. at 400131 (March 2, 2000, Order at 18) ("[T]he Court concludes that Plaintiff could not have received 'treatment, consultation, care, services, or diagnostic measures' *for* a sickness or injury unless there was some awareness that this actual sickness or injury existed."). Given that the district court, applying federal-law principles, reached the same conclusion that it would have reached had it applied Indiana state law, we see no basis for Caffey's objection. To the extent that Caffey is arguing that the district court was bound to follow Indiana state law in interpreting the Plan, she is incorrect. Federal common-law rules of contract interpretation, not state-law

the time of the second judgment following the retrial on damages in 1981. Noting that the purpose of the postjudgment interest statute is to compensate the plaintiff for "the loss from the time between the ascertainment of the damage and the payment by the defendant," the Court reasoned that postjudgment interest should begin to run once damages have been "'ascertained' in [a] meaningful way." *Id.* at 835-36 (quotation omitted). The Court concluded that damages were not meaningfully ascertained at the time of the first damages judgment, because that judgment was vacated and found to be unsupported by the evidence. "It would be counterintuitive, to say the least," the Court explained, "to believe that Congress intended postjudgment interest to be calculated from such a judgment." *Id.* at 836.

"We have applied *Kaiser* to hold that post-judgment interest runs from the date of any judgment that is not entirely set aside." *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 429 (6th Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000); *see also Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 954 F.2d 1263, 1274-75 (6th Cir. 1992). In *Coal Resources*, the district court entered a damages judgment for the plaintiff following a jury verdict on October 2, 1990. On appeal, we remanded the case for a new trial unless the plaintiff agreed to accept a remittitur reducing the damage judgment by $226,563. The plaintiff consented to the remittitur on January 30, 1992. *Coal Res.*, 954 F.2d at 1273. Upon the parties' request for clarification of the appropriate postjudgment interest award, we held that postjudgment interest began to accrue at the time of the October 2, 1990, judgment, rather than at the time that the plaintiff consented to the remittitur following appeal. *Id.* at 1275. We distinguished the Supreme Court's decision in *Kaiser* on the ground that the original damages award in that case was completely set aside, whereas the damages owing to the *Coal Resources* plaintiff "were sufficiently ascertained at the time of the District Court judgment." *Id.* We noted that our decision to require a remittitur following the appeal "merely reduced the damages by a distinct amount easily determined from the facts of the case." *Id.* Thus, *Coal Resources*

interest at that time, but reserved the right to reconsider its ruling "should there be a substantial delay between entry of judgment and payment by Defendant UNUM." J.A. at 400135 (March 2, 2000, Order at 22). The district court revisited the prejudgment interest issue in an order entered on June 6, 2000. In that order, the district court noted that its previous order awarding prejudgment interest had "failed to determine the applicable pre-judgment interest rate and the manner in which accrued pre-judgment interest is to be calculated." J.A. at 400315 (June 6, 2000, Order at 5). The district court adopted the interest rate set by the postjudgment interest statute, 28 U.S.C. § 1961, and determined that prejudgment interest should be calculated based upon the total amount of past-due benefits for the period from August 1990 through January 1999. Based upon this rate and principal amount, the court determined the total prejudgment interest award to be $40,608. The district court amended its prejudgment interest award in a subsequent order entered on September 29, 2000. In that order, the district court adopted the stream-of-benefits model for calculating interest advocated by UNUM, and consequently reduced its prejudgment interest award to $25,721. We must determine which of these three judgments triggered the postjudgment interest statute.

Our inquiry begins with the Supreme Court's decision in *Kaiser*. In that case, the plaintiff won a jury verdict in its antitrust suit for the trebled amount of $5,445,000. The district court entered judgment on that verdict on August 22, 1979. *Kaiser*, 494 U.S. at 830. The district court subsequently vacated the jury's damages award, however, based upon its conclusion that the verdict was unsupported by the evidence. *Id.* After a limited retrial on damages, a second damages award for the trebled amount of $9,567,939 was entered on December 4, 1981. *Id.* The district court granted the defendant's motion for judgment notwithstanding the verdict as to part of the damages award, and entered a reduced damages award on January 17, 1983. *Id.* On appeal, the parties disputed whether postjudgment interest should have begun to accrue at the time of the first judgment in 1979 or at

principles, guide our interpretation of employee welfare plans governed by ERISA. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (en banc).

## B.  Equitable Relief

Caffey appeals the district court's denial of a number of claims for what she terms as "equitable relief," including reinstatement of her health and life insurance benefits. Caffey asserts these claims under 29 U.S.C. § 1132(a)(3), which authorizes "appropriate equitable relief (i) to redress . . . violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Caffey contends that "restitution as part of equitable relief is not pre-empted by ERISA as it is not punitive or compensatory damages." Reply Br. at 14. Therefore, Caffey argues, UNUM "should have been ordered to provide Caffey with insurance coverage–health and life[–]since it was its non-payment [of disability benefits] which caused Caffey to lose her health and life insurance benefits." Reply Br. at 13-14.

ERISA does not permit recovery for the kind of losses asserted by Caffey. Caffey's claim is based upon the consequential losses she experienced as a result of UNUM's failure to perform under the Plan. She asserts that she should be compensated for her lost health and life insurance benefits, because it was UNUM's denial of disability insurance benefits that caused her to be unable to make the necessary premium payments on her other policies. Much as we sympathize with Caffey's plight, such claims are not within the scope of "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). In *Mertens*, the Supreme Court held that the term "equitable relief" in 29 U.S.C. § 1132(a)(3) refers only to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* at 256. *Mertens* made clear that compensatory and punitive damages are not considered "equitable relief" for the purposes of 29 U.S.C. § 1132(a)(3). *Id.* at 255. Although the *Mertens* Court did conclude that

"equitable relief" included restitution, the Supreme Court has recently explained that only traditionally "equitable" restitutionary remedies are available under this section. *Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S. Ct. 708, 716 (2002). In order to give the term "equitable relief" meaning, the Court explained, courts must "limit restitution to the return of identifiable funds (or property) belonging to the plaintiff and held by the defendant–that is, . . . limit restitution to the form of restitution traditionally available in equity." *Id.*; *see also Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 481 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1298 (2002). Plaintiff's claim for restoration of her lost health and life insurance benefits does not fall within this narrow category of relief. We therefore affirm the district court's denial of Caffey's claims for "equitable relief."

## C. Statutory Penalties for Failure to Provide Summary Plan Description

Caffey next appeals the district court's denial of statutory penalties under 29 U.S.C. § 1132(c)(1) for UNUM's alleged failure to provide her with a summary plan description and other documents. Section 1132(c)(1) provides for penalties of up to $100 per day, at the discretion of the district court, for a plan administrator's failure or refusal "to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request." "Because the statute expressly grants a district court discretion in imposing penalties for an employer's failure to disclose, we review only for abuse of discretion." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).

Plaintiff claims that UNUM failed to provide her a summary plan description in violation of 29 U.S.C. § 1024(b)(4), which provides that

[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining

Defendants would have a strong incentive to delay payment of prejudgment interest as long as possible, since they would be able to enjoy the benefit of continued use of the funds during any period of delay, and would bear a lesser financial burden once payment was ultimately made.

UNUM argues that any delay between judgment and payment of the prejudgment interest award was *de minimis*, because a check for the full amount of prejudgment interest was mailed to plaintiff approximately two weeks after the court's September 29, 2000, order finally determining the amount of the prejudgment interest award.[4] We find UNUM's argument to be without merit because UNUM incorrectly assumes that postjudgment interest did not begin to accrue until the district court's September 29, 2000, order. Application of our precedents instead dictates that postjudgment interest began to run on the district court's prejudgment interest award on March 2, 2000, when plaintiff's unconditional legal entitlement to prejudgment interest was initially established.

The Supreme Court has instructed that, according to the plain language of 28 U.S.C. § 1961, "postjudgment interest properly runs from the date of the entry of judgment." *Kaiser*, 494 U.S. at 835. Unfortunately, this rule does not resolve the question of when postjudgment interest began to accrue in the instant case, because the district court issued a number of "judgments" relating to prejudgment interest. The court entered the first of these judgments on March 2, 2000. In that order, the district court granted summary judgment to the plaintiff on her claim for disability benefits under the Plan and for prejudgment interest on all past due benefit payments. The district court denied plaintiff's request for postjudgment

---

[4]UNUM's argument raises an interesting legal question as to whether postjudgment interest may be waived when the defendant's delay in remitting payment is sufficiently minimal. We are aware of no precedent in this circuit answering this question. We need not resolve this issue, however, because we conclude that UNUM's delay in remitting payment of prejudgment interest was not *de minimis*.

statute provides that "[s]uch interest shall be calculated from the date of the entry of the judgment," and "shall be computed daily to the date of payment." 28 U.S.C. § 1961 (a), (b). The statute "mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court." *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982). The federal postjudgment interest statute allows interest on "all money judgments," including those in ERISA cases. *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002).

We hold that Plaintiff is entitled to postjudgment interest on the district court's award of prejudgment interest. The plaintiff requested such relief in her motion to the district court for postjudgment interest, although the district court did not address this claim in its September 29, 2000, order. A number of courts have held that postjudgment interest should be awarded on the entire amount of the judgment, including any prejudgment interest. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc); *Bancamerica Commercial Corp. v. Mosher Steel of Kans., Inc.*, 103 F.3d 80, 82 (10th Cir. 1996); *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995); *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 n.4 (11th Cir. 1991). We agree with this approach. As the Supreme Court has explained, "[t]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (quotation omitted). Prejudgment interest is part of the underlying damage award; and "[u]nder § 1961, postjudgment interest should be awarded on the entire amount of the judgment." *Quesinberry*, 987 F.2d at 1031. Moreover, failure to award postjudgment interest on the prejudgment interest element of the damages award would require the plaintiff to bear the cost of the lost time value of her award resulting from the defendant's delay in remitting payment. *Air Separation, Inc.*, 45 F.3d at 291.

agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

The district court denied plaintiff's claim for statutory penalties, because plaintiff failed to provide a list of documents that she had not been provided within twenty days of the March 2, 2000, order as required by the district court, and because plaintiff had not shown any evidence that she made a written request to the plan administrator for such documents as required by 29 U.S.C. § 1024(b)(4). In connection with the latter observation, the court noted that plaintiff had provided no citation to a docket number or exhibit entry number to assist the court in locating any such written request in the voluminous and highly disorganized record for the plaintiff's suit. Plaintiff argues that, as a pro se litigant, the district court should have given plaintiff the opportunity to locate proof of a written request in the record before dismissing her claim on the basis that she failed to cite a docket number. In her reply brief, plaintiff does attach a copy of an unsigned one-page letter dated April 23, 1992, which appears to be from plaintiff's former counsel, requesting a copy of the summary plan description from UNUM.

It is well established that only plan administrators are liable for statutory penalties under § 1132(c). *See Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001); *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992). Thus, we have held that an insurance company, which is not a plan administrator, cannot be liable for statutory damages for failure to comply with an information request. *Vanderklok*, 956 F.2d at 618. The definition of "plan administrator" in ERISA provides that the plan administrator is the "plan sponsor" unless otherwise specified in the plan. 29 U.S.C. § 1002(16)(A)(ii). Where, as is the case here, an employee benefit plan is maintained by a single employer, the "plan sponsor" is deemed to be the employer. *See* 29 U.S.C. § 1002(16)(B)(i). In the instant case, the Plan does not designate a plan administrator.

Therefore, ERISA's default provision dictates that Mansur, not UNUM, is the plan administrator. *See Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir. 1989) (holding that insurance company was not plan administrator for purposes of § 1132(c) liability where plan did not identify an administrator, leaving employer as administrator under ERISA default provision). Consequently, even if Caffey could show that UNUM failed to respond to written requests for a summary plan description, UNUM would not be liable for statutory damages under § 1132(c). We therefore affirm the district court's refusal to award statutory damages.

**D. Prejudgment interest**

Caffey disputes the district court's calculation of prejudgment interest. "Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). "A district court's calculation of prejudgment interest is reviewed on appeal for an abuse of discretion." *Id.* at 619.

In her briefs, Caffey disclaims any objection to the district court's use of a blended rate of interest, which averaged the 52-week United States Treasury Bill interest rate over the relevant time period.[3] Instead, Caffey claims that the district court refused to correct a "math error" in its prejudgment interest calculation. Caffey does not specify the nature of the "math error" in her briefs. It appears, however, that plaintiff's objection relates to the district court's denial of her motion for reconsideration of the court's June 6, 2000, order, in which she alleged that the court's calculation of prejudgment interest was $38.58 short. Plaintiff appears to have arrived at this

---

[3] We have previously approved this method, which is based upon the method prescribed in the postjudgment interest statute, 28 U.S.C. § 1961, for calculating prejudgment interest in ERISA cases. *Ford*, 154 F.3d at 619.

conclusion by using an interest rate of 5.22 % to calculate the annual interest amount. Although the district court showed that it used a rate of 5.22 % in a summary of its interest calculations attached to its September 9, 2000, order, the court actually determined the interest rate to be 5.216 %. Using this interest rate, the district court's calculations are correct. It appears that the district court simply rounded the rate to 5.22 % on its summary, but actually used 5.216 % in making its calculations. We therefore find Caffey's objection to be without merit.

To the extent that the plaintiff objects to the district court's use of a stream-of-benefits model to calculate prejudgment interest, we affirm the decision of the district court. The stream-of-benefits model calculated the interest due on each monthly payment of disability benefits beginning with the date that each payment was due. Caffey apparently advocated a simple interest model, which would calculate interest on the total amount of past due benefits beginning in August 1990. As UNUM correctly observes, this model assumes that the entire amount of benefits due for the period from July 30, 1990, to January 29, 1999, was due in August 1990. This assumption is incorrect, since Caffey was owed only one month's disability benefit in August 1990. Thus, Caffey's simple-interest model would overcompensate her for the delayed payment by awarding interest on individual benefit payments before they were due. *See id.* at 618 ("[A]n excessive prejudgment interest rate would overcompensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal . . . ."). Thus, the district court's use of a stream-of-benefits model was not an abuse of discretion.

**E. Postjudgment Interest**

Caffey next appeals the district court's denial of postjudgment interest on the court's award of legal expenses and prejudgment interest. Under 28 U.S.C. § 1961, district courts are required to award postjudgment interest. The