NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0497n.06
Filed: July 14, 2006

No. 05-5792

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

EDWARD J. WEBB, JR.,

      Plaintiff-Appellee,

v.

CARITEN INSURANCE COMPANY,

      Defendant-Appellant.

                                   /

On Appeal from the United
States District Court for the Eastern
District of Tennessee

BEFORE:    RYAN and COOK, Circuit Judges; and GWIN, District Judge.[*]

      RYAN, Circuit Judge.      Cariten Insurance Company appeals a district court decision awarding benefits, statutory penalties, and attorney fees to Edward J. Webb, Jr., under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1000-1461. We think the district court erred in applying the statute, and, therefore, we **REVERSE**.

**I.**

      In late 2002, Edward J. Webb, Jr., was diagnosed with advanced multiple myeloma, a hematologic cancer of the plasma cells. At the time, Webb was an attorney with Hunter, Smith, and Davis, LLP, and was a beneficiary under the law firm's group health insurance policy, which was issued by Cariten Insurance Company. During the time in question, there were two Benefit Plans in effect, one entered into on October 1, 2002, and a second one

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

entered into on October 1, 2003. It is conceded that administration of the plans was governed by ERISA. Hunter, Smith, and Davis, LLP, was listed as the "Plan Sponsor" in the October 1, 2002, Plan and as the "Plan Sponsor and Administrator" in the October 1, 2003, Plan.

Webb was initially treated by Dr. Alan Forbush, an internist designated by Cariten. Dr. Forbush referred Webb to a Cariten-approved oncologist, Dr. Koyamangalath Krishnan, who recommended that Webb be treated at the Arkansas Cancer Research Center (ACRC) at the University of Arkansas. ACRC, however, was not a designated service provider in Cariten's "network" of providers. Cariten determined that the services Webb needed for treatment of his illness were available at the Thompson Cancer Survival Center (TCSC) in Knoxville, Tennessee, a Cariten-participating or "in-network" provider facility. Consequently, Cariten advised Webb in January 2003, that it would not pay in-network rates for treatment at ACRC. A request for Cariten to reconsider this decision, which included a letter from Dr. Krishnan describing ACRC as Webb's "best chance," was denied. Despite Cariten's refusal to pay for Webb's treatment at ACRC at in-network rates, Webb decided that he would go to ACRC for part of his treatment anyway. Cariten agreed to pay for Webb's treatment at ACRC at the substantially lower "out-of-network" rates.

A number of parties contacted Cariten over the following months attempting to persuade the company to enter into negotiations with ACRC for the cost of Webb's treatment. Several individuals, purporting to act on Webb's behalf, requested information from Cariten regarding the company's fee schedules. Cariten, however, did not provide such information and did not enter into negotiations with ACRC. In December 2003, the company received a letter from Anthony Seaton, an attorney for Webb, threatening legal

action to obtain the requested fee schedule information and other relief. Cariten offered to release the information providing Webb first fill out a form recognizing Seaton as his representative and a form authorizing the release. Webb completed the forms and sent them to Cariten, whose counsel then sent a letter to Seaton detailing the "fee schedule rates." Cariten continued its refusal to pay for Webb's ACRC treatment at in-network rates.

## II.

On February 27, 2004, Webb filed an ERISA lawsuit against Cariten in federal district court. He sought "to recover benefits due to him under . . . [his employer's health benefit] plan," according to 29 U.S.C. § 1132(a)(1)(B). He also requested statutory penalties on the theory that Cariten had violated 29 U.S.C. § 1132(c) when it refused for several months to provide requested fee schedule information. At a hearing on Cariten's motion for judgment on the pleadings, the district court found that there was no evidence that Webb was unable to receive the treatment he needed at TCSC, only that ACRC was better and even a "premier" facility. On this basis, the district court concluded that Cariten's decision not to pay for Webb's treatment at ACRC at in-network rates was not "arbitrary or capricious" in terms of the Benefit Plan. The court then observed that had Cariten been open to the idea, it was likely that ACRC would have taken Webb as a patient and charged Cariten the same amount of money that TCSC would have charged, that is, in-network rates. The court then held that Cariten's refusal to enter into negotiations with ACRC was "unreasonable and even inhumane." Warming to the subject, the court, as though pressing the parties to settle their dispute, ordered Cariten to begin negotiations with ACRC immediately and to pay ACRC the lesser of its charges for Webb's treatment and the amount Cariten would have paid TCSC for the same treatments. The court then referred

the case to a magistrate judge with instructions to recommend appropriate sanctions and attorney fees against Cariten. On the magistrate judge's recommendation, the district court assessed a $12,550 statutory penalty against Cariten for a violation of 29 U.S.C. § 1132(c)(1)—failure of a plan administrator to respond to a request for information—and $54,000 in attorney fees under 29 U.S.C. § 1132(g). The district court incorporated all the foregoing into a judgment which Cariten has appealed. The company challenges the district court's order requiring the insurer "negotiate" with ACRC and pay for Webb's treatment according to the district court's formula. It claims that such "relief" is not authorized by Webb's ERISA-governed health plan.

### III.

When interpreting ERISA plans, "federal courts apply 'general rules' of contract law as part of the federal common law." Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 615 (6th Cir. 2002). These general rules of contract law dictate that a court should "give[] effect to the unambiguous terms of the contract." Univ. Hosps. of Clev. v. South Lorain Merchants Ass'n, 441 F.3d 430, 437 (6th Cir. 2006). The October 1, 2002, ERISA Plan, which was in effect when Cariten made its January 2003 benefit determination on Webb's claim, gave the insurer no discretionary authority to grant or deny benefits. Accordingly, we review Cariten's determination de novo. Evans v. Unumprovident Corp., 434 F.3d 866, 875-76 (6th Cir. 2006).

Cariten argues that the district court's decision ordering Cariten to negotiate with ACRC and fixing the formula for payment of ACRC's charges granted Webb relief not authorized under the Benefit Plan because "[t]he Plan nowhere requires Cariten to pay In-Network benefits for Out-of-Network treatment," nor does it require Cariten to negotiate with

out-of-network facilities.  Before fashioning its equitable remedy, the district court correctly held that there is no contractual obligation under the Plan requiring Cariten to pay ACRC at in-network rates.  And we hold that there is nothing in the Plan requiring Cariten to negotiate with ACRC.  In fact, the Plan clearly defines "participating" and "non-participating" providers and spells out "in-network" and "out-of-network" benefits.  We note that there is no evidence in the record that TCSC was unable to provide the treatment Webb needed.

Webb nonetheless argues that it was "arbitrary or capricious" for Cariten to deny benefit payments to ACRC at in-network rates.  He claims he had little choice but to go to ACRC for the best available treatment because he was faced with "life or death."  While Webb's decision to seek treatment immediately at what he believed to be the "premier" cancer treatment facility is understandable, it did not obligate Cariten, either under the law of contracts or ERISA, to pay for Webb's treatment at rates not agreed to by Cariten in the insurance contract, especially when the same treatment was offered by a participating provider at rates Cariten was obligated to pay.

The district court's order directing Cariten to enter into negotiations with ACRC and to pay ACRC amounts in excess of what the Benefit Plan required, was not authorized by the ERISA plan and was beyond the court's authority.  The judgment must be set aside.

**IV.**

Further, Cariten's failure to respond to requests for information should not have resulted in an award of statutory penalties under ERISA.  District courts have discretion under ERISA to award limited statutory penalties against a plan "administrator," 29 U.S.C. § 1132(c)(1), but not others.  See Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 584-85 (6th

Cir. 2002).  ERISA further provides that the plan administrator is the one "specifically so designated by the terms of the instrument under which the Plan is operated" or, if no "administrator is . . . so designated," the administrator is the "plan sponsor."  29 U.S.C. § 1002(16)(A)(i)-(ii).  The October 1, 2003, Benefit Plan identifies Hunter, Smith, and Davis, LLP, Webb's employer, as the "Plan Sponsor and Administrator."  The October 1, 2002, Benefit Plan is silent as to the identity of the plan administrator, but identifies Hunter, Smith, and Davis, LLP, as the "Plan Sponsor."  Under both plans, then, the law firm, not Cariten, was the plan administrator.  See Caffey, 302 F.3d at 585.  Webb's argument and the district court's conclusion that Cariten should be "considered" the plan administrator because Cariten had access to the relevant information is mistaken.  ERISA does not recognize a putative plan administrator especially when a statutory administrator has been named in the plan document and statutory penalties may be awarded, if at all, only against the "real" plan administrator.  Cariten was not the "administrator" of the Benefit Plan and, as we have held before, "an insurance company, which is not a plan administrator, cannot be liable for statutory damages for failure to comply with an information request."  Caffey, 302 F.3d at 584.

**V.**

Lastly, we note that the district court's award of attorney fees was an abuse of discretion.  Historically, we have reviewed attorney fees awarded under ERISA according to the multi-factor test laid out in Maurer v. Joy Technologies, Inc., 212 F.3d 907, 919 (6th Cir. 2000), but we have also held that it is always "'an abuse of discretion for the district court to award attorney's fees to a losing party.'"  Cattin v. General Motors Corp., 955 F.2d

(No. 05-5792)                              -7-

416, 427 (6th Cir. 1992) (quoting <u>Bittner v. Sadoff & Rudoy Indus.</u>, 728 F.2d 820, 829 (7th

Cir. 1984)).

**VI.**

    For the above reasons, we **REVERSE** the district court's judgment awarding relief

to Webb, as well as the decision ordering Cariten to pay statutory penalties and attorney

fees.