**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0164n.06
Filed: February 25, 2009

**No. 08-3620**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANGELA SMITH | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellant, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO, EASTERN DIVISION |
| v. | ) | |
| | ) | |
| HEALTH SERVICES OF COSHOCTON, *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     MARTIN, MOORE, Circuit Judges; and, GWIN, District Judge.[*]

GWIN, District Judge:

In this Employee Retirement Income Security Act ("ERISA") action, Plaintiff-Appellant

Angela Smith appeals a district court's order granting Defendant-Appellee Medical Mutual of Ohio,

_____

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of
Ohio, sitting by designation.

1

Inc.'s ("Medical Mutual's")[1] motion for judgment on the Administrative Record. Plaintiff Smith filed this action in the Southern District of Ohio, arguing that Defendant Medical Mutual's decision to deny coverage for a medical procedure that Smith underwent was arbitrary and capricious. The district court affirmed Medical Mutual's decision.

On appeal, Plaintiff Smith maintains that (1) Medical Mutual did not afford her claim a "full and fair" review under the standard set out in 29 U.S.C. § 1133; (2) Medical Mutual's decision to deny coverage was not supportable because it was not based on any medical plan provision, but rather on an unpublished corporate internal policy; and (3) Medical Mutual's decision to deny coverage was arbitrary and capricious.

For the reasons stated below, we **AFFIRM** the district court's judgment.

### I. Background

Plaintiff Angela Smith, who is five feet, three inches tall and at one time weighed two-hundred eighty-eight pounds, began working in 2002 as a nurse for Health Services of Coshocton. *Smith v. Med. Mut. of Ohio, Inc.*, No. 2:06-cv-941, 2008 WL 780613, at *1 (S.D. Ohio Mar. 24, 2008). On July 18, 2003, Smith underwent a laparoscopic bypass. The procedure was successful and, over time, Smith lost one hundred nineteen pounds. *Id.* Due to this extraordinary weight loss, Smith experienced rolls of hanging skin that she sought to have removed through a procedure known as a panniculectomy or abdominoplasty. *Id.*

In April 2005, Plaintiff Smith requested coverage from Defendant Medical Mutual for a

---

[1] Medical Mutual is the insurer of a health benefit plan offered by Health Services of Coshocton. Plaintiff Smith's Complaint named Medical Mutual, Health Services of Coshocton, and Health Services of Coshocton Employee Health Plan ("the Plan") as Defendants. The Plaintiff dismissed all entities but Medical Mutual as parties in the case at the district court level.

surgical procedure to remove the hanging excess skin that was to be done by Dr. Risal Djohan of the Cleveland Clinic. The Plan documents state that all covered services must be medically necessary. A medically necessary service is (1) "appropriate with regard to the standards of good medical practice and not [e]xperimental or [i]nvestigational"; (2) not primarily for your convenience or for the convenience of a [p]rovider"; and (3) "the most appropriate supply or level of service which can be safely provided to you."

The Plan specifically excludes from coverage surgery "and other services primarily to improve appearance or to treat a mental or emotional [c]ondition through a change in body form (including cosmetic [s]urgery following weight loss or weight loss [s]urgery), except as specified." Thus, panniculectomies and abdominoplasties are excluded from coverage by the terms of the Plan. Despite the fact that the Plan does not cover panniculectomies and abdominoplasties, Medical Mutual Corporate Medical Policy #96001 (the "Policy") interprets the terms of the Plan by specifying that an individual can establish the medical necessity of such a procedure and thereby obtain coverage for it by demonstrating that: (1) the panniculus extends below the "inferior margin of the pubic ramus"; (2) the medical record documents "evidence of a chronic intertrigo or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of six months"; and (3) the medical record documents that the panniculus interferes "with activities of daily living."

Supporting Smith's need for the surgery, Dr. Djohan's letter to Medical Mutual stated that Smith had "a large abdominal panniculus[,] . . . . obvious maceration of the underlying skin inferior to the panniculus[,] . . . . a wide base weakness of the upper left quadrant abdominal wall fascia which could represent a hernia[,] . . . . low back pain . . . [and] intertrigo."

On April 21, 2005, Medical Mutual sent a letter to Smith telling her that "[t]he medical

3

information received is limited. The health plan is requesting the following information be submitted: Documented evidence of rash/ulceration under excess skin and treatment (office/ progress notes)." It is unclear from the Administrative Record whether Dr. Djohan's request was ever substantively addressed. Dr. Djohan apparently did not provide any additional information to Medical Mutual.

On June 9, 2005, Dr. Brentley A. Buchele of OSU Surgery, LLC submitted a request for pre-certification of Smith's panniculectomy. His letter stated, in part: "Angela Smith . . . . has occasional rashes and sweating in [her] abdominal folds [following a successful gastric bypass surgery]. As [seen in] the accompanying photographs[,] she has a significant amount of redundant skin, which would be best treated by . . . an abdominal [p]anniculectomy . . . ."

In response to Dr. Buchele's request, Medical Mutual sent a letter to Smith stating that "[t]he medical information received is limited. The health plan is requesting that the following information be submitted: ICD-9 CODE AND OFFICE NOTES DOCUMENTING CHRONIC INTERTRIGO THAT RECURS OR REMAINS DESPITE MEDICAL TREATMENT." Upon receiving this letter, Dr. Buchele sent a facsimile with the following message: "Our office has received a request for additional information on the above patient. I have attached a letter for you as well as copies of the patient's office notes. Diagnosis code: 701.9. Excess abdominal tissue." Accompanying the facsimile were two pages of Dr. Buchele's office notes.

On July 6, 2005, Medical Mutual issued an internal "Institutional/Professional Review" in Smith's case. The section of the document marked "Physician Advisor Response"contained the comment: "Not CMP compliant. Panniculus does not extend below pubic ramus." A box marked "Denied" is checked on the form.

4

On July 12, 2005, Medical Mutual sent a letter to Smith[2] denying her request for pre-certification of her panniculectomy and saying that "[a]fter review of the medical records, computer images or photos provided, it has been concluded that there is no functional impairment or functional complaints documented.[3] Therefore, the procedure is considered cosmetic. Under the subscriber's contract, cosmetic services are not reimbursable and the request for this service is denied."

Smith appealed Medical Mutual's decision. As part of the appeal, she included her own letter and those of two of her doctors. In his letter, Dr. Michael Woolery, Smith's family physician, recounted that after Smith's surgery, she had excessive skin under her "arms, across the back and

---

[2] The following are the other relevant portions of Medical Mutual's first decision letter:

This is not an approval for claim payment. This is a decision regarding medical necessity only. . . .

The Care Management Department has received a predetermination request for the above referenced patient. The medical information that was submitted has been carefully reviewed by a licensed healthcare professional and it has been determined that the following predetermination request is not eligible for reimbursement. In making the decision the reviewer relied on medical review criteria used by your health plan, plan certificate, or summary plan description . . . .

The clinical rationale utilized for this denial is provided below: After review of the medical records, computer images or photos provided, it has been concluded that there is no functional impairment or functional complaints documented. Therefore, the procedure is considered cosmetic. Under the subscriber's contract, cosmetic services are not reimbursable and the request for this service is denied.

Upon written request and free of charge, you may ask for reasonable access to, and copies of documents, records and other information relevant to this denial, or a further explanation that details the scientific or clinical criteria that lead to this decision. For further information, send a letter detailing the information you are requesting to . . . .[the address provided in the letter is omitted]

The member, member's authorized representative, or provider can submit a written request for an appeal for the denied services. The appeal should include any relevant information to support the consideration of the denial. The appeal must be initiated within one hundred eighty (180) days from the date of this letter. A decision will be made within thirty (30) calendar days of the receipt of the request . . . .

[3] The "functional impairment" or "functional complaint" language likely comes from the Plan's definition of the term "surgery." According to the Plan, coverage is provided for surgery "to correct functional or physiological impairment which was caused by disease, trauma, birth defects, growth defects or prior therapeutic processes . . . . Surgery to correct a deformity or birth defect for psychological reasons, where there is no functional impairment, is not covered."

5

abdomen, and on her thighs . . . [resulting] in . . . back pain and abdominal pain. She also experienced a rash between the skin folds . . . due to the excessive skin." He noted that these impairments limited Smith's "ability to exercise in order to maintain her successful weight loss and continue a healthy lifestyle." Dr. Woolery concluded by asking that Medical Mutual "consider Ms. Smith's reasonable request to have this medically necessary surgery approved and covered."

Another of Smith's doctors, Dr. Dennis Hurwitz, wrote that Smith did not "like the appearance of the sagging skin [on her abdomen, thighs, and arms] and she [felt] it [was] causing her, by its hanging nature, recurrent skin breakdown[s] and rashes through the pubic area due to overlapping skin and chronic low back pain and shoulder pain." Dr. Hurwitz's physical examination of Smith revealed "considerable laxity of abdominal skin overlapping the pubic area with hyperpigmentation and erythematous rash in the pubic region[,] . . . . extraordinarily loose thigh skin, particularly in the medial and anterior region, and some laxity of the buttocks." Thus, Dr. Hurwitz recommended "a medical[ly] necessary panniculectomy to correct the recurrent skin infections and back aches" and requested "preauthorization for correction panniculectomy for chronic panniculitis due to the hanging skin."

On August 11, 2005, Medical Mutual mistakenly informed Smith that her coverage with Medical Mutual had terminated on July 24, 2005. After rectifying the coverage issue and undergoing the panniculectomy at her own expense, Smith requested – on September 14, 2005 – that Medical Mutual re-open her appeal and reimburse her for expenses associated with the panniculectomy.

Medical Mutual re-opened Smith's appeal and referred her case to MCMC, an independent review organization, for review. MCMC, in turn, referred the case to Dr. David Bryan – a board-

6

certified plastic surgeon who had no previous involvement with Smith's claim. Specifically, MCMC asked Dr. Bryan to determine whether Smith's panniculectomy was medically necessary and in compliance with corporate medical policy.

After reviewing Smith's case, Dr. Bryan concluded that "[t]he proposed panniculectomy for this member is not in compliance with Corporate Medical Policy for approval." Dr. Bryan indicated that Policy # 96001 "requires that each of three specific clinical criteria be [met] in order to identify for medical necessity. [Smith] does not meet the first criterion in that the photographs submitted do not demonstrate the panniculus which extends beyond inferior margin of pubis ramus." Further, Dr. Bryan noted that Smith "does not meet [P]olicy criteria #2 [because] . . . . the medical record submitted does not document evidence of a chronic intertrigo or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of six months." Finally, Dr. Bryan stated that "the medical record does not document that the third criterion is fulfilled which requires that the panniculus be documented to interfere with activities of daily living." On October 10, 2005, Medical Mutual sent a letter to Smith telling her that it had denied her appeal in reliance on Dr. Bryan's conclusions.[4]

---

[4] In relevant part, Medical Mutual's second decision letter stated:

> The reviewer has determined that the service remains denied. In making this decision the health plan relied on guidelines used by Medical Mutual and the covered person's certificate or summary plan description. The reason for the denial is as follows:

> The proposed panniculectomy for this member is not in compliance with Medical Mutual Corporate Medical Policy for approval. Policy requires that each of three specific clinical criteria be met in order to identify for medical necessity. The member does not meet the first criterion in that the photographs submitted do not demonstrate the panniculus which extends beyond the inferior margin of the pubic ramus. The member also does not meet the second criterion in that the medical record submitted does not document evidence of a chronic intertrigo or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of six months. Lastly, the medical record does not document that the third criterion is fulfilled which requires that the panniculus be documented to interfere with activities of daily living.

7

On January 24, 2006, Smith's attorney sent a letter to Medical Mutual stating that Smith would pursue an appeal of Medical Mutual's decision and requesting certain documentation. Medical Mutual responded on March 10, 2006, indicating that Smith's claim was denied because, after a "review of the medical records and computer images provided, it has been concluded that there are no functional impairments or functional complaints documented." Along with this letter, Medical Mutual forwarded to Smith the requested documentation, including the Administrative Record and the relevant Plan documents.

Smith then filed suit in the Southern District of Ohio, arguing that Medical Mutual's decision was arbitrary and capricious. The district court held that, "viewing the Administrative Record as a whole, . . . [Medical Mutual's] decision [to deny benefits to Smith] was rational in light of the [P]lan provisions,"*Smith*, 2008 WL 780613, at *9, and granted judgment on the Administrative Record in favor of Defendant Medical Mutual, *id.* Plaintiff Smith filed a timely notice of appeal.

## II. Legal Standard

This Court reviews "'*de novo* the decision of a district court granting judgment in an ERISA . . . benefit action based on an administrative record,' applying the same legal standard as does the district court." *Wenner v. Sun Life Assur. Co. of Can.*, 482 F.3d 878, 881 (6th Cir. 2007) (citations omitted). When a benefits plan grants the administrator discretionary authority to interpret the terms of the plan and the allocation of benefits, the Court "will only reverse an administrator's determination if it is 'arbitrary and capricious.'" *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citations omitted). Because the plan at issue provides for discretion, we apply the

"arbitrary and capricious" standard of review.

While the arbitrary and capricious standard is "the least demanding form of judicial review of administrative action," *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000), "it is not a rubber stamp for the administrator's determination," *Elliot*, 473 F.3d at 617 (citing *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). Under this standard, "we will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Id.* (citations omitted).

Further, "[w]hen determining whether a decision was arbitrary [and] capricious, we also factor in whether there 'existe[d][ ] a conflict of interest.'" *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 553 (6th Cir. 2008); *see also Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008) ("[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.").

In *Glenn*, the Supreme Court clarified *when* a conflict of interest arises and *how* such a conflict should be weighed in judicial review of a discretionary benefit determination. 128 S. Ct. 2348-51. The Court held that there is a conflict of interest when "a plan administrator both evaluates claims for benefits and pays benefits claims," *id.* at 2348, even when "the plan administrator is not the employer itself but rather a professional insurance company," *id.* at 2349. Applying *Glenn*, we believe that it is clear that Medical Mutual had a conflict of interest because Medical Mutual both evaluates claims for benefits and pays benefits claims. Because there is a conflict of interest, we weigh that conflict as a "'factor in determining whether there is an abuse of discretion.'" *Id.* at 2350 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

*Glenn* instructs that "any one factor will act as a tiebreaker when the other factors are closely

balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* at 2351. A conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* By contrast, a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Id.*

The record does not show that Medical Mutual has a history of biased claims administration or that the conflict otherwise affected the benefits decisions. On the other hand, nothing in the record indicates that Medical Mutual has taken the kinds of steps to reduce bias and promote accuracy that were identified in *Glenn*. Medical Mutual has, however, complied with federal regulations by referring Smith's claim after appeal to an independent review organization, which in turn referred the claim to an independent board-certified plastic surgeon.[5] Accordingly, we give

---

[5]29 C.F.R. § 2560.503-1(h) provides:

Appeal of adverse benefit determinations.

. . . .

(3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures—

. . . .

(iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has

10

Medical Mutual's conflict neither greater nor lesser weight and simply consider it as one factor in determining whether there was an abuse of discretion.

## III. Analysis

Plaintiff Smith alleges that Defendant Medical Mutual's decision with respect to her benefits claim was procedurally flawed and substantively arbitrary and capricious, thereby requiring reversal. Specifically, Smith contends that Medical Mutual (1) did not provide Smith with a full and fair review of her claim, as required by 29 U.S.C. § 1133; (2) decided her claim on the basis of an internal Policy (one allegedly bearing little, if any, relationship to any relevant Plan term) that Smith was given no notice of until Medical Mutual rendered its final decision; and (3) relied on a review of Smith's file provided by a physician who had never examined Smith and who tacitly rejected all of Smith's evidence. Because we determine that Smith's claim was given a fair review and the decision of Medical Mutual was not arbitrary and capricious, we affirm the district court's judgment.

A. The district court did not err in finding that Medical Mutual provided Smith with a full and fair review, as required by 29 U.S.C. § 1133.

Plaintiff Smith contends that Defendant Medical Mutual's "broad departures from ERISA's claim processing regulations did not provide [her] or her doctors with a fair opportunity to present her case." In particular, Smith argues that Medical Mutual failed to comply with the notice

---

appropriate training and experience in the field of medicine involved in the medical judgment;

. . . .

(v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual . . . .

11

requirements of 29 C.F.R. § 2560-503-1(g)(1).[6] We find that Medical Mutual substantially complied with the ERISA notice requirements and therefore we decline to remand to the administrator.

This Court reviews *de novo* "'the question of whether the procedure employed by the plan administrator in denying the claim meets the requirements of [§2560-503-1].'" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 459 (6th Cir. 2003) (citing *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir. 1996)).

We have held that "administrators need only *substantially comply* with these ERISA notice requirements in order to avoid remand. To decide whether there is substantial compliance, [the] Court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005); *see also Kent*, 96 F.3d at 807. Under this analysis, "this Court asks whether the plan administrators fulfilled the essential purpose of § 503 – notifying [the plaintiff] of their reasons for denying [her] claims and affording [her] a fair opportunity for review." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006) (citing *Kent*, 96 F.3d at 807).

While "an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator," *id.*, remand is not required if it would

---

[6]This statute requires the plan administrator to provide

written . . . notification of any adverse benefit determination . . . . [including the] specific reason or reasons for the adverse determination[,] [r]eference to the specific plan provisions on which the determination is based[,] [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary[,] [a] description of the plan's review procedures," and, if the adverse benefits determination was made based upon an internal rule . . ., either the actual internal rule . . . or a statement that such a rule . . . "was relied upon in making the adverse determination . . . .

29 C.F.R. § 2560-503-1(g)(1).

"represent a useless formality," *McCartha*, 419 F.3d at 444 (citing *Kent*, 96 F.3d at 807). Pursuant to Sixth Circuit case law, remand represents a useless formality if the plan administrator provides at least one reasonable basis for the denial of benefits, even if two different and independent reasons are given for the denial. *Id.* at 446-47.

In *Moore*, this Court held that the administrator's denial letter complied with ERISA notice procedures and "clearly placed [the] [p]laintiff on notice as to why [the administrator] was denying benefits," *Moore*, 458 F.3d at 437, because it "explained its reason for denying [the] [p]laintiff's claim . . . ." *Id.* at 436. Similarly, in *Kent*, this Court concluded that the communications between the plaintiff and the insurance company substantially complied with the requirements of § 503 because they insured "that the claimant understood the reasons for the denial of the claim as well as her rights to review of the decision." 96 F.3d at 807. The *Kent* Court reached this decision despite the fact that only the second of the two denial letters[7] "cited the relevant plan language relating to disability, . . . informed [the plaintiff] that the medical reports received did not support a finding of continued disability under the definition, and . . . informed [the plaintiff] that she had a right to appeal the determination under the plan within 60 days of the date of that letter." *Id.* at 805.

In this case, Medical Mutual substantially complied with the ERISA notice requirements in communicating with Smith. For instance, in the first decision letter, Medical Mutual stated that, after a review of the provided medical record and other materials, it had determined that the procedure was cosmetic and therefore not covered by Smith's Plan because there was no documented functional impairment or functional complaints. This decision specifically indicated that it

---

[7] The "first letter did not meet the requirements of the statute and regulation[] and the second letter was untimely . . . ." 96 F.3d at 807.

13

concerned "medical necessity only" and it followed several communications between Smith and Medical Mutual in which Medical Mutual asked that Smith or her doctors provide documented evidence of rashes or ulcerations under Smith's excess skin and chronic intertrigo that recurred or remained despite medical treatment.[8] Further, this denial letter also included information about how Smith could obtain copies of documents, records, or other information relevant to the denial or a further explanation of the basis of the denial. Finally, the letter provided instructions regarding the appeals procedure of the decision.

The second decision letter also substantially complied with ERISA notice requirements. Smith appealed Medical Mutual's initial denial of benefit coverage and, as a result, her claim was referred to an independent board-certified plastic surgeon for review. The decision letter following this review stated that Medical Mutual would deny Smith's claim based on the reviewer's determination. Additionally, the letter indicated that the requested panniculectomy was "not in compliance with Medical Mutual Corporate [Medical] Policy" and it laid out the terms of this Policy. The requests for information previously sent by Medical Mutual to Smith explicitly asked her to send in documents supporting these specific clinical criteria.

The second decision letter also indicated that Smith could request an independent external review and outlined the steps for pursuing such a review, including the optional submission of information or records that were not previously considered. Moreover, it stated that Smith could

---

[8] These requests reflect the three specific clinical criteria of medical necessity outlined in Policy #96001. When responding to this first decision letter, Smith's doctors spoke to the conclusion that the panniculectomy was a cosmetic and not a medically necessary procedure, thereby demonstrating Smith's (and their) understanding of the reasoning behind Medical Mutual's denial of coverage. Dr. Michael Woolery asked that Medical Mutual "consider Ms. Smith's reasonable request to have this medically necessary surgery approved and covered." Similarly, Dr. Dennis Hurwitz recommended "a medical[ly] necessary panniculectomy to correct the recurrent skin infections and back aches."

receive, upon a written request and free of charge, "reasonable access to, and copies of, all documents relevant to the appeal, including the documents or records relied upon in making the appeal decision, and documents or records submitted in the course of making the appeal decision." Smith could also receive "a copy of the actual benefit provision, guideline, protocol, or other similar criterion on which the appeal decision was based."

Taken together, the letters sent by Medical Mutual substantially complied with the ERISA procedural requirements because they provided written notice of the adverse benefit determination, the specific reason for the determination, and a description of the Plan's review procedures, as well as a means for Smith to obtain further information relevant to the decision. Both letters also provided Smith with an opportunity to appeal the decision.

Moreover, even if we were to assume that both letters did not substantially comply with ERISA notice requirements, remand would be a "useless formality" because the reason for denying Smith's coverage request never varied and was reasonable. Smith was told about the documents she needed to submit to Medical Mutual in support of her claim, but the information she provided did not support a finding of medical necessity. Further, Smith cannot argue that Medical Mutual did not adequately communicate the basis for denying her claim, particularly with respect to the first denial letter, because Smith was provided an opportunity to request copies of the documents relied upon in reaching the decision, including the actual benefit provision or rule, and she did not do so.

Thus, we decline to remand to the administrator because we hold that the district court did not err in determining that Medical Mutual provided Smith with a full and fair review, as required by 29 U.S.C. § 1133.

B. The district court did not err in finding that Medical Mutual's use of a Corporate Medical Policy

to interpret the medical necessity of the requested panniculectomy was not arbitrary and capricious.

Plaintiff Smith argues that Defendant Medical Mutual acted arbitrarily and capriciously when it denied coverage for the requested panniculectomy because Medical Mutual allegedly "supplanted" the terms of the Plan with Policy #96001, in contravention of 29 C.F.R. § 2560.503-1(b)(5). We determine that Policy #96001 reasonably interpreted the terms of the Plan and conclude that the district court did not err in finding that Medical Mutual's use of the Policy in evaluating the medical necessity of the requested panniculectomy was appropriate and not arbitrary and capricious.

According to 29 C.F.R. § 2560.501-1(g)(1)(v)(A), if an administrator makes an adverse benefit determination while relying on an internal rule or policy, "either the specific rule . . . or a statement that such a rule . . . was relied upon in making the adverse determination and that a copy of such rule . . . will be provided free of charge to the claimant upon request[.]"

A plan administrator can rely on internal rules or policies in construing the terms of an employee benefits plan only if these rules or policies reasonably interpret the plan. *See Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1100 (6th Cir. 1993); *see also Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir.1990); *May v. Roadway Express, Inc.*, 813 F. Supp. 1280, 1284 (E.D. Mich. 1993). In *Egert*, the Seventh Circuit held that the administrator's reliance on internal guidelines in construing the terms of the plan rendered the ultimate benefits decision arbitrary and capricious because the guidelines were substantially inconsistent with the terms of the plan – disallowing coverage seemingly in contravention of the plan's language – "and [their use] le[]d to contradictory dispositions of similarly situated claims." 900 F.2d at 1038.

Unlike the internal guidelines in *Egert*, Policy #96001 is not inconsistent with the Plan in defining medically necessary procedures. According to the Plan, medically necessary procedures

must be (1) "appropriate with regard to the standards of good medical practice and not [e]xperimental or [i]nvestigational;" (2) "not primarily for [the covered individual's] convenience or the convenience of a [p]rovider;" and (3) "the most appropriate supply or level of service which can be safely provided [to the covered individual]." More specific to this case, the Plan also states that it excludes from coverage the following procedures: "[s]urgery and other services primarily to improve appearance or to treat a mental or emotional [c]ondition through a change in body form (including cosmetic [s]urgery following weight loss or weight loss [s]urgery), *except as specified*."

Policy #96001 is consistent with the Plan because it specifies *when* surgery following weight loss is medically necessary. Pursuant to Policy #96001, Smith's panniculectomy would covered by Medical Mutual if Smith (1) submitted "frontal and lateral photographs demonstrating a panniculus which extends beyond the inferior margin of the pubic ramus"; (2) presented "[d]ocumented evidence of a chronic intertrigo . . . or ulcer that consistently recurs or remains refractory to appropriate medical therapy over a period of 6 (six) months"; and (3) offered "[d]ocumentation that the panniculus interferes with activities of daily living." As a result, the internal Policy in question is reasonable in interpreting the terms of the employee benefits Plan, if not more generous with respect to the benefits provided to the covered individual than the Plan itself.

Because we find that Policy #96001 reasonably interpreted the Plan, we hold that the district court did not err in finding that Medical Mutual's use of Policy #96001 in determining the medical necessity of the requested panniculectomy was not arbitrary and capricious.

C. The district court did not err in finding that Medical Mutual's decision was not substantively arbitrary and capricious.

Plaintiff Smith argues that Defendant Medical Mutual's decision to deny coverage for her

17

panniculectomy was arbitrary and capricious because (1) Medical Mutual relied on the opinion of independent reviewers, as opposed to that of four of Smith's doctors, in reaching its decision; (2) the independent reviewing physician chose to conduct a paper review of Smith's file instead of completing an in-person physical examination of the Plaintiff; and (3) the independent reviewing physician did not make his decision based on the complete Administrative Record. For the reasons provided below, we determine that Medical Mutual's decision was reasonably supported by the record and was not arbitrary and capricious.

*1. Medical Mutual's reliance on one physician's opinion over another was not arbitrary and capricious.*

Generally, when a plan administrator relies on "the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation . . . for the plan administrator's decision." *McDonald v. W.-S. Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003)*. Additionally, the Supreme Court has held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians," as compared to independent reviewing physicians. *Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003)*.

In this case, four doctors wrote in support of Smith's contention that her requested procedure was medically necessary. Of these four individuals, however, only one appears to be a board-certified plastic surgeon. Moreover, as the Supreme Court held in *Black & Decker*, Medical Mutual did not need to afford any special deference to the opinions of Smith's treating physicians. Medical Mutual's decision was also based on the opinion of two independent reviewers, including Dr. David

18

Bryan – a board-certified plastic surgeon who was selected to examine Smith's claim by an independent review organization. Specifically, Dr. Bryan determined that Smith did not satisfy the three clinical criteria set out in Policy #96001 based on his review of submitted photographs and medical records. Dr. Bryan also certified that he had no involvement with Smith's case, her doctors, or Medical Mutual prior to the referral of the case for his independent review. Thus Medical Mutual's reliance on the opinion of independent reviewers, as opposed to Smith's doctors, was not arbitrary and capricious.

*2. Medical Mutual's reliance on a file review was not arbitrary and capricious.*

A decision not to conduct a physical examination in lieu of a paper review of the record does not render a plan administrator's decision arbitrary and capricious. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Instead, we consider the plan administrator's "decision to conduct a file review rather than a physical exam as just one more factor . . . in our overall assessment of whether [the administrator] acted in an arbitrary and capricious fashion." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006). Where we have found a file review to support a determination that an administrator's decision was arbitrary and capricious, the review has been conducted by a doctor employed by the plan administrator who based his decision on selected portions of the administrative record or whose findings were inherently inconsistent or contradicted objective medical findings. *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 374-78 (6th Cir. 2005); *see also Calvert*, 409 F.3d at 295-97.

In this case, as described above, Dr. Bryan was a neutral party and not employed by Medical Mutual. Further, Dr. Bryan's medical conclusions were not inherently inconsistent, nor were they inconsistent with the opinions of Smith's doctors, none of whom had determined whether the

requested panniculectomy was medically necessary in light of both the Plan *and* the Policy. Finally, Dr. Bryan's conclusions were not contradicted by the available objective evidence because photographs taken of Smith, as well as her medical records, supported Dr. Bryan's determinations.

Other factors also support the conclusion that Medical Mutual's decision to rely on a paper review of Smith's records was not arbitrary and capricious. First, a number of photographs and supporting documents and records were submitted for the administrator's review and for the consideration of an independent physician in this case. Second, a physical examination would not have a purpose at the appeals stage of the claim because Smith had already undergone the panniculectomy and an examination would not reveal, after the fact, whether or not the procedure would be medically necessary. As a result, Medical Mutual's decision to rely on a paper review of Smith's records was not arbitrary and capricious.

*3. The independent reviewer's decision was based on the full Administrative Record.*

To decide whether a plan administrator's denial of benefits is arbitrary and capricious, an appeals court must review the administrative record as it existed when the plan administrator made its final decision to determine whether the record "can support a 'reasoned explanation' for [the administrator's] decision . . . ." *Moon, 405 F.3d at 379* (citing *Williams, 227 F.3d at 712*). This review includes the evaluation of the "'quantity and quality of the medical evidence and the opinions on both sides of the issues.'" *Id.* (citing *McDonald, 347 F.3d at 172*).

The provision of an incomplete administrative record by a plan administrator to a reviewer for the purpose of assessing benefits or coverage is considered arbitrary and capricious unless all relevant medical records relating to a claim are provided for review. *See Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 362 (6th Cir. 2002)* (holding that a plan administrator's

20

decision to deny benefits was arbitrary and capricious because it "cherry-picked" the claimant's file "in hopes of obtaining a favorable report from the vocational consultant as to [the claimant's] ability to work" and concluding that the administrator "should have provided [the reviewer] with all of the medical records relevant to" the request for benefits").

Plaintiff Smith contends that Dr. Bryan based his decision that the requested panniculectomy was not medically necessary on an incomplete record because he did not receive two of the four pages of Dr. Buchele's records, any of Smith's own letters, or a copy of the Plan.  First, it is clear that Dr. Bryan did receive Smith's letters, as he noted her complaints throughout his report.  Second, Dr. Bryan specifically stated in his report that he made his determination based on Policy #96001. Finally, even if Smith has established that the record provided to Dr. Bryan by Medical Mutual was missing two pages, she has not described their contents or import or demonstrated that Dr. Bryan's opinion would have changed had they been included.  *See White v. HealthSouth Long-Term Disability Plan*, 320 F. Supp. 2d 811, 816-817 (W.D. Ark. 2004).

Further, even if we assume the absence of two pages from the record provided by Medical Mutual to Dr. Bryan, we must still decide whether the record, as a whole, supports a reasoned explanation for the plan administrator's decision. *Moon*, 405 F.3d at 379 (citing *Williams*, 227 F.3d at 712).  We determine that it does.  Applying *Glenn*, we have weighed Medical Mutual's conflict of interest as one factor in reviewing the decision.  128 S. Ct. 2350.  However, we conclude that the other factors are not closely balanced in this case given the support in the record for the Plan administrator's decision.  We therefore hold that Medical Mutual's decision was not arbitrary and capricious.

**IV. Conclusion**

21

For the reasons stated above, we **AFFIRM** the district court's judgment.