107 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rosalyn CAFFEY, Plaintiff-Appellant,
v.
UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
 No. 95-6373.
 United States Court of Appeals, Sixth Circuit.
 Feb. 03, 1997.
 
 Before: BROWN, GUY, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Rosalyn Caffey, the pro se appellant,[1] seeks total disability coverage after severe headaches and visual impairment forced her to leave her employment at Mansur Group, Inc. (Mansur). Mansur carried an employee insurance plan (Mansur Plan) through UNUM Life Insurance Company of America (UNUM), against whom Caffey commenced an action under § 502(a)(1)(B) of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) (1988 & Supp.1994), alleging wrongful denial of benefits.[2] Following cross-motions for summary judgment, the district court denied Caffey's motion and granted UNUM's. Now, Caffey appeals the district court's grant of summary judgment. Having carefully considered the arguments on appeal, we VACATE the district court's decision and REMAND for further proceedings.
 
 I. FACTS AND BACKGROUND
 
 2
 Caffey worked for Mansur as a financial analyst from September 11, 1989 until June 29, 1990, when headaches and blurred vision compelled her to stop working. As a Mansur employee, Caffey was required to participate in the company's group long-term disability plan, which UNUM administered. Caffey paid three-fourths of the costs of coverage, with Mansur paying the remaining one-fourth. The terms of the Mansur Plan specify that, in consideration for premiums paid, UNUM agreed to pay total disability benefits to the insured, subject to certain conditions and exclusions. One such exclusion reads:
 
 
 3
 This policy will not cover any total disability:
 
 
 4
 1. caused by, contributed to by, or resulting from a pre-existing condition; and
 
 
 5
 2. which begins in the first 12 months after insured's effective date.
 
 
 6
 A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care, or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.
 
 
 7
 Joint Appendix at 498.
 
 
 8
 As of October 12, 1989, Caffey's "effective date" under the plan, she became eligible for long-term benefits. On July 14, 1990, Caffey applied to UNUM for total disability benefits, citing severe headaches and the inability to see objects or her "CRT screen" clearly as the basis for disability on the claim application. Because Caffey filed her claim within the first twelve months after her effective date, UNUM reviewed her medical history to determine whether the Pre-Existing Condition clause precluded her from recovering. During the course of its investigation, UNUM discovered that Caffey, then in her early thirties, had been experiencing hormone-related headaches and various visual anomalies since her early teens.[3] In particular, Caffey's medical record revealed that on August 23, 1989, she consulted Dr. Mitchelson for migraines and blurred vision and received a prescription for Procardia. In July of 1990, Dr. Purvin examined Caffey for her recurrent migraines and problems with her vision and, again, prescribed Procardia. When her condition failed to improve and she developed additional symptoms such as memory loss and motion sickness, Caffey underwent further evaluations. All concerned believed that Caffey's headaches and visual problems in the summer of 1990 resulted from her lifelong affliction with migraine. Then, on March 27, 1991, doctors at Indiana University Medical Center diagnosed Caffey with Lupus Erythematosus after she tested positive for a DNA antibody characteristic of that disease. As a result, Dr. Purvin reassessed her presumptive diagnosis of migraine, stating in a letter that "the headaches for which [Caffey] was treated in July and August of 1990 must have been a manifestation of her lupus rather than a flare-up of her previous migraine." Likewise, another of Caffey's doctors, Dr. Tord, in a letter distinguished between her previous migraine and the onset of lupus in June of 1990.
 
 
 9
 After reviewing Caffey's medical history, Dr. Beecher, one of UNUM's staff physicians, concluded that Caffey suffered from a pre-existing condition because "the diagnosis of migraine with visual disturbances is identical" to both Caffey's August, 1989, consultation with Dr. Mitchelson and her July, 1990, examination by Dr. Purvin. UNUM, based on this determination, first denied Caffey's claim in a letter sent to her on May 2, 1991. Caffey filed successive appeals, arguing that the headaches and visual abnormalities for which she consulted Dr. Mitchelson in August, 1989, predated the onset of her lupus. Accordingly, she argued, the lupus could not be a "pre-existing condition" within the meaning of the Mansur Plan. In support of this claim, she supplied UNUM with letters from Dr. Tord and Dr. Purvin, both of whom fix the onset of her lupus to the summer of 1990. In response, Dr. Beecher reviewed Caffey's medical records anew and determined that the diagnosis of lupus was incorrect. Consequently, UNUM upheld its initial denial of Caffey's claim. When Caffey again appealed, Dr. Beecher further stated that, even if Caffey suffered from lupus, it is not possible to retroactively fix the onset of lupus to the summer of 1990, contrary to the claims of Caffey's doctors.
 
 
 10
 Following UNUM's repeated denials of coverage, Caffey commenced this action in federal court.[4] Following cross-motions for summary judgment, the district court ruled in favor of UNUM. In reaching this conclusion, the district court did not specifically address the opinions of Dr. Purvin and Dr. Tord or the onset of new symptoms in the summer of 1990. Instead, the court reasoned:
 
 
 11
 Plaintiff's argument is logically inconsistent. Plaintiff was not diagnosed as having lupus until March of 1991, nearly nine months after she had left her employment with Mansur. Plaintiff seeks to retroactively associate her diagnosis of March 1991 with her symptoms of July 1990. Yet Plaintiff desires to disassociate her headaches of August 1989 from her subsequent diagnosis of lupus, because to do otherwise would be to concede a pre-existing condition.
 
 
 12
 J.A. at 997.
 
 
 13
 Caffey now appeals the district court's decision.
 
 Analysis
 
 14
 We review the district court's grant of summary judgment de novo. Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 15
 When addressing the denial of benefits under an ERISA plan, as in the present case, a reviewing court affords no deference to the factual findings of the plan administrator unless the plan reserves discretion to the administrator. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Perez v. Aetna Life Ins. Co., 96 F.3d 813, 825 (6th Cir.1996). In the present case, the district court apparently concluded that the Mansur Plan does not include language that would warrant reviewing UNUM's denial of Caffey's claim under a deferential standard. Having reviewed the plan ourselves, we agree with the district court and, therefore, undertake a de novo review of UNUM's decision. See Perez, 96 F.2d at 825. In so doing, we limit our evaluation to that evidence which was before UNUM when it acted upon Caffey's application for benefits. Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir.1990).
 
 
 16
 As an initial matter, we note that the district court appears to have misallocated the burden of persuasion to Caffey. According to common law trust principles, the administrator of an ERISA-regulated plan has the burden to prove exclusions from coverage. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.1992). Inasmuch as UNUM seeks to establish an exclusion from coverage, the burden rests with it to establish by a preponderance of the evidence that the Pre-Existing Condition exclusion prevents Caffey from prevailing. Miller v. United Welfare Fund, 72 F.3d 1066, 1074 (2d Cir.1995) (citing Fuja v. Benefit Trust Life Ins. Co., 18 F.3d 1405, 1408 (7th Cir.1994)); Farley, 979 F.2d at 658.
 
 
 17
 UNUM argues that, because Caffey's alleged disabling condition involved the same symptoms as those which prompted her to consult Dr. Mitchelson in August, 1989, the same illness was responsible, whether labeled migraine or lupus.[5] Although the similarity of the symptoms creates a reasonable inference in UNUM's favor, we determine that specific facts in the record prevent the inference from becoming conclusive. Cf. Bullwinkel v. New England Mut. Life Ins. Co., 18 F.3d 429, 433 (7th Cir.1994) (upholding a grant of summary judgment to an insurance company when a breast lump discovered prior to the plaintiff's effective date was later diagnosed as cancer, and the plaintiff failed to adduce evidence to rebut the inference that the lump had been cancerous when discovered).
 
 
 18
 Such facts include evidence that Caffey functioned ably with her hormone-related migraine for more than twenty years prior to the summer of 1990, when her headaches and visual problems so affected her that she was unable to work. Simultaneously, she began to experience unusual symptoms, such as motion sickness and memory loss. In explaining the nature of her condition, letters from two of Caffey's treating physicians support the argument that Caffey suffered from two distinct illnesses and that one of her maladies, lupus, did not set in until the summer of 1990. Dr. Purvin writes:
 
 
 19
 I had first seen Caffey in April of 1987 for visual symptoms related to migraine. She returned for a followup in July of 1990 because of a recent exacerbation of headaches and visual loss. I made a presumptive diagnosis of recurrent migraine and she was treated with the appropriate medications.
 
 
 20
 ....
 
 
 21
 In retrospect, the headaches for which she was treated in July and August of 1990 must have been a manifestation of her lupus rather than a flare-up of her previous migraine. Prior to the summer of 1990 she had no evidence of lupus.
 
 J.A. at 281. Similarly, Dr. Tord writes:
 
 22
 Prior to June 1990, [Caffey] has never been treated or showed any activity of [systemic lupus]. There was no reason to believe up to that time that she had this medical problem.
 
 
 23
 ....
 
 
 24
 The onset of her illness is dated June 19, 1990....
 
 
 25
 J.A. at 300.
 
 
 26
 During the claim review process, Caffey presented UNUM with evidence that she suffered from two different diseases with similar symptoms. Faced with a competing explanation for Caffey's medical condition, one supported by Caffey's treating physicians, UNUM responded only with repeated reviews of Caffey's file by a member of its medical staff. In reviewing the file, Dr. Beecher acknowledged that Caffey's memory loss needed to be "better defined" but nevertheless found the similarity of symptoms to be conclusive in the present case. Dr. Beecher apparently based her conclusion largely on Dr. Purvin's initial diagnosis of migraine in July, 1990, yet failed to address Dr. Purvin's later withdrawal of her earlier diagnosis. Likewise, Dr. Beecher did not address Dr. Tord's medical opinion with respect to Caffey's condition, except summarily to conclude that Dr. Tord was incorrect. At this juncture, we view all evidence in a light most favorable to and draw all inferences in favor of Caffey. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Consequently, a factual issue remains as to whether Caffey received medical treatment, consultation, care, or services for her disabling condition during the pre-existing period.
 
 
 27
 We write further to address an issue raised by the appellee in its brief to this court--that actual diagnosis is inconsequential under the "clear and unambiguous" terms of the Mansur Plan. Brief for Appellee at 24-25 (relying on Marshall v. UNUM Life Ins. Co., 13 F.3d 282 (8th Cir.1994)). UNUM argues that, assuming Caffey suffered from lupus in August 1989 and that lupus ultimately caused her to be disabled, the Pre-Existing Condition clause bars Caffey from recovering even though she was not diagnosed with lupus until after her effective date. Caffey does not respond to this argument, and without expressly ruling on the issue, the district court appears to have accepted UNUM's contention. However, our research indicates that when, as here, a policy defines a "pre-existing" condition as treatment "for" a sickness or injury, that language may be susceptible to more than one understanding. Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 270 (1st Cir.1995) (rejecting the Eighth Circuit's view of similar language in Marshall, 13 F.3d 282). Resolving that ambiguity in favor of the insured, the court in Hughes found that the pre-existing condition clause bars recovery only when the treating physician or the insured is at least somewhat aware that the insured is receiving treatment for the condition itself. 26 F.3d at 269-70; accord Pitcher v. Principal Mut. Life. Ins. Co., 93 F.3d 407, 417 (7th Cir.1996). Reading the Mansur Plan in such a manner would enable Caffey to recover, if lupus caused her disability, because Dr. Mitchelson was not aware of lupus when he treated Caffey in August 1989. Having concluded that further proceedings are warranted in this case, we need not rule on the clarity of the Mansur Plan's pre-existing condition clause at this juncture, but bring the issue to the district court's attention for consideration on remand.
 
 
 28
 As summary judgment is not appropriate in this instance, we VACATE the district court's decision and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 Initially, attorney Bryan Davenport represented the plaintiff in her appeals to UNUM. Davenport was replaced by attorneys John Beam and Karl Warden when Caffey filed suit in federal court. However, the district court granted their motion to withdraw as counsel at an early stage in the proceedings. Since then, Caffey has represented herself
 
 
 [2]
 Section 1132(a)(1)(B) authorizes a participant or beneficiary of an ERISA plan, which the Mansur Plan is, "to recover benefits due to [her] under the terms of [her] plan."
 
 
 [3]
 Caffey's medical record chronicles numerous consultations, beginning with Dr. Oestrike on June 6, 1984. Dr. Oestrike, a neurologist, noted that Caffey was "prone to migraines." In March 1985, Dr. Mitchelson, an ophthalmologist, treated Caffey for "a history of decreased vision in the left eye." On April 6, 1987, Dr. Fountain, a vitreoretinal disease specialist and surgeon, documented Caffey's unusual visual symptoms, including blurriness, and observed that Caffey was "on Midrin for migraine headaches." Dr. Purvin, a neuro-ophthalmologist, first saw Caffey in April 1987, at which time the doctor reported Caffey's symptoms as "episodic visual loss," migraine headaches, and "difficulty thinking, expressing herself, and reading." On October 20, 1987, Dr. Purvin again saw Caffey and reiterated her opinion that Caffey suffered from migraine. When Caffey returned to Dr. Purvin in the summer of 1990, Dr. Purvin diagnosed her symptoms as recurrent migraine. On August 9, 1990, Dr. Alonso, a neurologist, considered Caffey's medical history since age 12 and likewise found it to indicate migraine caassociee
 
 
 [4]
 Initially, Caffey sought relief under various state law theories, alleging breach of contract, bad faith, consumer deception, and misrepresentation. The district court, however, properly dismissed these claims as preempted by ERISA, 29 U.S.C. § 1144(a). The case proceeded on the remaining ERISA count in Caffey's amended complaint
 
 
 [5]
 The Mansur Plan defines a pre-existing condition, not in terms of symptoms, but as a "sickness" which the plan further defines as an "illness or disease." J.A. at 491