File Name: 09a0638n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 09-3275**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 10, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MICHAEL KLEIN, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS HEALTH AND | ) | |
| WELFARE PLAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN, COOK, and FARRIS, Circuit Judges.[*]

COOK, Circuit Judge. In this ERISA case, defendant Central States appeals from a district

court ruling reversing an administrative decision denying benefits to the plaintiff, Michael Klein, and

ordering immediate approval and payment for an allogenic bone marrow transplant. Central States

argues that the administrative record supplies a reasoned explanation for the Trustees' decision, and

therefore the district court erred by failing to uphold it under the arbitrary and capricious standard

of review. We agree and accordingly reverse.

---

[*]The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

I. BACKGROUND

A.

Klein participates in the Central States, Southeast and Southwest Areas Health and Welfare Plan (the Plan), a multi-employer employee welfare benefit plan that provides health benefits to its participants. The Plan is a tax-qualified, non-profit trust; it is not an insurance company, has no shareholders, and earns no profits. A Board of Trustees (the Trustees), composed of an equal number of union and management appointees, administers the Plan. Individual trustees derive no personal benefit from the approval or denial of any claim for benefits.

Physicians diagnosed Klein with chronic lymphocytic leukemia (CLL) in 2005. Klein's physician, Dr. Leslie Andritsos, treated his condition with conventional therapies. Those treatments helped, but the disease still progressed. In 2007, at Klein's request, the Plan and Medical Mutual of Ohio (with whom the Plan contracted to perform certain claim processing functions) pre-approved his participation in a clinical study open only to CLL patients for whom "standard treatments" had failed.

Although this treatment initially achieved excellent results, Dr. Andritsos soon determined that Klein's CLL required further treatment involving "salvage therapy with experimental therapeutics," and recommended that Klein undergo a non-myeloblative allogeneic stem cell transplant (the Transplant). Dr. Andritsos requested pre-approval, which Medical Mutual denied as

experimental and therefore excluded from coverage. Dr. Andritsos requested another review, and Medical Mutual engaged a panel of three independent experts, asking them to determine whether sufficient evidence existed to demonstrate that the Transplant was "more likely than not to be more beneficial . . . than standard treatments or procedures." One expert said yes, two said no; because the majority answered in the negative, Medical Mutual (and subsequently the Plan's internal appeals committee) again denied Klein's claim.

Dr. Andritsos appealed this decision to the Trustees, who immediately referred the claim to yet another independent medical expert, a Dr. Fingert. The Trustees supplied Dr. Fingert with all the information in the Plan's possession concerning the claim, including the diagnosis, the treatments received by Klein, Dr. Andritsos's reasons for recommending the Transplant, articles discussing the Transplant, and all information provided to the Plan by Klein or his physician.

After review, Dr. Fingert deemed the Transplant "not medically necessary" and "experimental." He explained that "[e]ven though there may be few other treatment options in this setting, insufficient data are available from controlled, completed studies to conclude that allogeneic transplant (as proposed here) will provide durable and reliable disease control in this specific clinical situation." The Transplant "remains a subject of ongoing investigations," and experts in the field advocate further study. These facts, viewed together, led Dr. Fingert to conclude that "the proposed procedure is investigational."

Equipped with Dr. Fingert's independent opinion, in addition to the other evidence in the administrative record, the Trustees unanimously found the Transplant experimental and denied Klein's request for pre-approval under § 4.02 of the Central States Health and Welfare Plan Document (Plan Document), which expressly excludes from coverage any treatment "not uniformly and professionally endorsed by the medical community as Standard Medical Care."

B.

After exhausting his administrative remedies, Klein sued the Plan in district court, seeking to compel pre-approval of and payment for the Transplant. The parties cross-moved for judgment on the administrative record. Klein argued that the Trustees deprived him of a comprehensive review because Dr. Fingert reviewed a "cherry-picked" record, and the Plan responded by submitting an affidavit from Central States' Benefits Director Albert Nelson stating that, except for the other independent expert opinions obtained by Medical Mutual, Central States provided Dr. Fingert with all the information it possessed pertaining to Klein's claim.

Despite the Nelson affidavit, the district court rejected Dr. Fingert's opinion as a basis for the Trustees' decision by focusing on the following language in his report:

REVIEW DATA:
CENTRAL STATES HEALTH AND WELFARE FUND referral form and the submitted clinical highlights.

- 4 -

Relying exclusively on this excerpt, the court construed the statement that Dr. Fingert had reviewed

the "referral form and the submitted clinical highlights" as meaning that he had "reviewed only the

referral form and clinical highlights" in making his decision, and therefore concluded that Dr. Fingert

formed his opinion using "incomplete evidence," rendering the Trustees' reliance on his report

arbitrary and capricious.

Turning to the expert panel convened by Medical Mutual, the court rejected all three opinions

because, in its view, Medical Mutual asked the wrong question. Specifically, rather than asking

whether the Transplant was experimental, standard, or medically necessary, the court determined

(incorrectly)[1] that the experts had been asked "whether other treatments were superior to that

proposed by the treating physician." Because it found that these experts responded to a question it

viewed as irrelevant, the district court characterized any reliance by the Trustees on their opinions

as inappropriate and insufficient to support denial of Klein's claim.

Addressing Klein's affirmative evidence, the district court relied on Dr. Andritsos's opinion,

which recommended the Transplant as "far superior to any commercially available chemotherapy-

based regimen," and cited statistics showing that the procedure resulted in "a 54 to 75% overall

survival with a 34 to 75% disease-free survival with the possibility of cure." The court also reviewed

medical articles found in the administrative record, concluding that the "vast majority" of them

---

[1] On appeal, the parties do not dispute that Medical Mutual actually asked them "whether there [was] sufficient evidence to demonstrate that the [Transplant] [was] more likely than not to be more beneficial to the client than standard treatments or procedures."

showed that researchers had been aware of the beneficial effects of the Transplant in CLL patients for almost twenty years. The court (straying from both the plan language and the Trustees' reasonable interpretation of that language) found that the "Administrative Record supports Dr. Andritsos's conclusion that the [Transplant] is the only treatment to which Klein's condition is likely to respond." After holding that the Trustees acted arbitrarily and capriciously in denying Klein's claim and acknowledging that the usual remedy in such situations called for remand to the Trustees, the court instead ordered the Plan to "immediately award the benefits which plaintiff seeks," because, due to the gravity of Klein's condition, "time [was] of the essence." This appeal ensued.

## II. ANALYSIS

This court reviews a district court's judgment on the administrative record de novo. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). Where, as here, "a plan grants the administrator discretionary authority to interpret the terms of the plan and to determine benefits, courts will reverse an administrator's determination only if it is 'arbitrary and capricious.'" *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citations omitted). Under this "least demanding form of judicial review," the administrator's decision may not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).

A.

"When determining whether a decision was arbitrary [and] capricious, we also factor in whether there 'existe[d] . . . a conflict of interest.'" *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552–53 (6th Cir. 2008); *see also Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008). Klein accuses the Trustees of laboring under a conflict, mounting two distinct lines of attack, one general and the other specific. Generally, he claims that the Plan's structure creates an inherent conflict because the Trustees not only approve and deny claims, but also maintain responsibility for ensuring that the Plan remains properly funded. More specifically, Klein also accuses the Trustees of bias in their handling of his personal claim, citing evidence that they considered an internal legal memorandum during their deliberations and factored the cost of the Transplant into their evaluation.

We conclude that no conflict existed. The district court made no explicit factual findings establishing a conflict, and to the extent Klein attempts to support such a finding on appeal, his effort fails. The Plan is a multi-employer benefit plan without a profit motive, and individual trustees receive no personal financial benefit from approving or denying claims. Several courts have considered this issue and concluded that this structure does not create an inherent conflict of interest. *See Manny v. Central States, Se. & Sw. Areas Pension & Health and Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004); *Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989); *Muse v. Central States, Se. & Sw. Areas Health & Welfare Funds*, 227 F. Supp. 2d 873, 877 (S.D. Ohio 2002).

Furthermore, the record contains no evidence that cost savings concerns motivated the

Trustees' decision. That the Trustees knew the dollar value of the proposed procedure when they reviewed Klein's appeal does nothing to establish a conflict of interest. After all, anyone charged with approving or denying a claim knows that medical procedures cost money and that approving payment will diminish the assets available to pay such claims. Moreover, the Board of Trustees is composed of an equal number of employer and employee representatives, and they enlisted independent medical experts to aid their evaluation. And contrary to the district court's concerns about the presence of an in-house legal opinion in the administrative record, the Trustees' consideration of the legal ramifications of their decision does not tarnish their review. Accordingly, we apply arbitrary and capricious review without adjusting for the alleged conflict.

B.

Relying on § 9.06(b) of the Plan Document, the district court assigned the burden of proving entitlement to benefits to Klein. That section states:

> The burden of proof in demonstrating any fact essential to the approval of any claim for benefits, including eligibility for any claimed benefit and the extent to which a claimed benefit is covered or payable in accordance with this Plan, shall at all times be the responsibility of the claimant.

On appeal, Klein argues that the district court wrongly allocated the burden because "according to common law trust principles, the administrator of an ERISA-regulated plan has the burden to prove exclusions from coverage." *Caffey v. Unum Life Ins. Co. of Am.*, No. 95-6373, 1997 WL 49128, at *3, 1997 U.S. App. LEXIS 2080, at *8 (6th Cir. Feb. 3, 1997) (citing *Farley v. Benefit*

*Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992)).  But as the district court correctly observed,

"federal courts may not apply common law theories to alter the express terms of written benefit

plans."  *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997).  Because the Plan

Document explicitly placed the burden of proof on the claimant, it controls over the common law,

and distinguishes this case from *Caffey*.  In *Caffey*, unlike here, the plan included no such express

provision.  Thus, the district court properly assigned Klein the burden of proof.

C.

The Trustees denied Klein's claim pursuant to § 4.02 of the Plan Document, which they

construed as excluding coverage for experimental treatments.  Section 4.02 provides:

> EXCLUSION OF PAYMENT FOR TREATMENT NOT CONSIDERED
> MEDICALLY NECESSARY
>
> A Covered Individual shall not be entitled to payment of any charges for care,
> treatment, services or supplies which are not medically necessary or are not
> uniformly and professionally endorsed by the general medical community as
> Standard Medical Care, Treatment, Services or Supplies.

Klein maintains that whether the Transplant was "experimental" is irrelevant, and that the

Trustees should have asked whether, pursuant to the plan language, it was "medically necessary" or

"uniformly and professionally endorsed by the general medical community as Standard Medical

Care."  But the Trustees possessed discretion to construe the terms of the plan, and their

interpretation was reasonable, and therefore must be upheld.  *See McCartha v. Nat'l City Corp.*, 419

F.3d 437, 443 (6th Cir. 2005). The Trustees rationally interpreted the plan language as excluding

experimental procedures because any experimental treatment is not "standard" care. *See Mayeaux*

*v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 429–30 (5th Cir. 2004) (plan language excluding

non-standard medical treatment applied to investigational use of drugs); *see also Barnett v. Kaiser*

*Found. Health Plan, Inc.*, 32 F.3d 413, 414–15 (9th Cir. 1994) (plan exclusion for experimental or

investigational procedures excluded services "not recognized in accord with generally accepted

medical standards as safe and effective"). Accordingly, we find that the Trustees did not err in

determining that the Plan excluded experimental treatments from coverage, and thus turn our

attention to whether the record supports their classification of the Transplant as experimental.[2]

In denying Klein's claim, the Trustees relied upon a report supplied by independent medical

expert Dr. Fingert, whose review of the file led him to conclude that the Transplant was "not

medically necessary," and "experimental." On its face, Dr. Fingert's report supplies a reasoned

explanation for the Trustees' decision to deny Klein's claim pursuant to their interpretation of § 4.02.

Recognizing as much, Klein attacked Dr. Fingert's opinion in the district court by claiming that he

---

[2] Klein urges the court to consider § 4.17 of the Plan Document, which sets forth eligibility conditions for certain transplants, as an alternative basis for upholding the district court's decision. Klein presented this argument to the district court, which properly rejected it. Sections 4.02 and 4.17 do not conflict because § 4.02 excludes experimental, non-standard treatments from coverage, while § 4.17 discusses coverage of certain transplants but mentions nothing about whether the Plan provides coverage for transplants subject to exclusion under § 4.02. The Trustees, within their discretion, read § 4.17 as applying only to transplants not otherwise excluded, i.e., those uniformly endorsed as standard care. Thus, § 4.02 controlled, and § 4.17 never triggered because the Transplant fell within the general exclusion. Like the Trustees' interpretation of § 4.02, this interpretation of § 4.17 was reasonable and must be upheld.

reviewed an incomplete record that Central States improperly "cherry-picked" before submitting it to him. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (denial of claim was arbitrary and capricious where founded upon expert report issued after review of cherry-picked file). The Plan responded to this charge by filing the Nelson affidavit, which stated that Dr. Fingert received "all of the information that Central States had pertaining to Mr. Klein's claim," excepting only the opinions of the other independent medical experts previously obtained by Central States. The Plan properly withheld other medical opinions from Dr. Fingert to ensure that he offered an unbiased, independent opinion. Klein challenged the admission of the Nelson affidavit, but the district court overruled his objection. He renews that challenge on appeal, arguing that introducing the affidavit violated the procedural strictures governing review of ERISA benefit claims. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998). But the district court correctly rejected this contention because *Wilkins* expressly permits a party to supplement the record in response to a procedural challenge like the one Klein asserts here—specifically, that the Trustees deprived him of a full, unbiased review by allegedly supplying Dr. Fingert with an incomplete and selectively chosen record. *Id.* at 619.

Despite admitting the Nelson affidavit, the district court nevertheless sided with Klein in deeming Dr. Fingert's review incomplete, and thus held that the Trustees arbitrarily and capriciously relied on the report. In reaching this conclusion, the district court relied exclusively on the "REVIEW DATA" section of the report with its reference to the "referral form and submitted clinical highlights." To the district court, this meant that Dr. Fingert reviewed "only the referral form

and clinical highlights," with "clinical highlights" understood as only the "highlights" of what Central States had submitted.

The Plan contends that the district court misread this portion of Dr. Fingert's report and therefore erred in discrediting his opinion. We agree. Dr. Fingert's statement that he reviewed the "submitted clinical highlights"—which the district court cited as the sole basis for rejecting his otherwise well-reasoned opinion—did not mean, as the district court found, that he limited his review to only the "highlights" of the claim file Central States provided. Rather, the phrase appears to be a term of art used generically by physicians to describe the information submitted and reviewed when issuing a written medical opinion. Another expert in this case employed the very same phrase when describing the evidence he reviewed, and nothing in that opinion hints that it lacked completeness. The phrase also appears in at least one other case in similar circumstances, again without any hint of an intention to signal an incomplete review. *See Smith v. Champion Int'l Corp.*, 573 F. Supp. 2d 599, 640 (D. Conn. 2008). Given this usage (which Klein provides no evidence or authority to dispute), and in light of the uncontradicted evidence that the Plan provided Dr. Fingert with a complete file, the district court should have interpreted his statement to mean that he reviewed everything provided to him, i.e., the entire file. No evidentiary basis existed for concluding otherwise. Once armed with a proper understanding of the evidence Dr. Fingert reviewed, the only reason for rejecting the opinion vanishes, leaving the district court's decision to do so erroneous and mandating reversal and entry of judgment in the Plan's favor.

And even if the district court's interpretation of the phrase "submitted clinical highlights" was the correct one, that statement—and any negative inference it may have drawn concerning the thoroughness of Dr. Fingert's review—did not, by itself, permit the court to reject the opinion. *See Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 861 (6th Cir. 2009). Nothing else about Dr. Fingert's report suggests that he lacked knowledge of any important fact contained in Klein's file. On the contrary, reading the report in its entirety reveals a foundation anchored in a thorough review of the record—it accurately recites Klein's medical condition and treatment history; addresses Dr. Andritsos's recommendation, including specific reports on which she relied; and demonstrates that Dr. Fingert considered twelve medical articles discussing the Transplant. On appeal, as in the district court, Klein fails to identify a single fact that Dr. Fingert neglected to consider, nor does he point to any information which, if considered, would have altered Dr. Fingert's conclusions. Dr. Fingert's report supplied a reasoned explanation for the Trustees' decision, and we owe deference to that decision. *See Kalish v. Liberty Mut./Liberty Life Assurance Co.*, 419 F.3d 501, 506 (6th Cir. 2005). Because the district court erred by rejecting Dr. Fingert's opinion, we reverse and remand with instructions to enter judgment in the Plan's favor. We need not reach the Plan's other arguments for reversing.

## III. CONCLUSION

For these reasons, we reverse the district court's judgment and remand for entry of judgment in favor of the Plan.

- 13 -