NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0198n.06

No. 20-3337

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ANGELA HARRISON, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Apr 19, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| LIFE INSURANCE COMPANY OF | ) | THE SOUTHERN DISTRICT OF |
| NORTH AMERICA, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: CLAY, McKEAGUE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Once Angela Harrison's medical conditions prevented her from working, she applied for long-term disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA). The Life Insurance Company of North America (which goes by LINA) denied her claim for benefits because Harrison has long suffered from depression and anxiety. LINA reasoned that Harrison fell within a plan provision that bars disability benefits when an individual's disability is "caused" or "contributed to by" these types of preexisting conditions. Harrison then brought this suit for disability benefits under ERISA. The district court agreed with LINA's reasoning and rejected Harrison's claim. On appeal, the parties debate several interesting legal issues about the plan's meaning. But we need not resolve these legal issues in this case. Even if we ruled for Harrison on all of them, she would still lose. The record leaves no doubt that her preexisting depression and anxiety were but-for causes of her disability. That fact bars her request for benefits under the plan. We affirm.

I

Harrison began working as a customer service representative for a lender (Advance America, Cash Advance Centers, Inc.) on September 8, 2014. Her job duties at Advance America ranged from selling financial products to customers and providing customer service, to handling money and ensuring that transactions were properly documented, to collecting debts and helping with car repossessions. Harrison performed these stressful duties for just over a year until October 5, 2015, when she became unable to work and began her disability leave.

Harrison has long struggled with depression and anxiety. In the years leading up to her job with Advance America and during her tenure there, she received treatment and medication for these mental-health conditions. After leaving this job in October 2015, Harrison was also diagnosed with a medical condition referred to by a variety of names in the record (what we will call "Right Hemisphere Deficit Syndrome"). This condition resulted from a brain injury at birth and has impaired Harrison's cognitive functioning. Harrison thus was knowingly suffering from depression and anxiety and unknowingly suffering from Right Hemisphere Deficit Syndrome when she worked as a customer representative at Advance America.

After she left the company, Harrison applied to LINA—the insurer and plan administrator of Advance America's employee benefit plan—for long-term disability benefits. On her claim form, Harrison stated that her depression, anxiety, and Right Hemisphere Deficit Syndrome (among other ailments) affected her ability to work. Citing Harrison's depression and anxiety, LINA denied her claim under a preexisting-condition limitation in the plan's terms. Harrison appealed the denial of her claim within LINA. She argued that Right Hemisphere Deficit Syndrome had caused her inability to work (that is, her disability) and that the preexisting-condition limitation did not apply because she had not been diagnosed with this condition until

after she had left Advance America. LINA denied Harrison's appeal. It reasoned that her depression and anxiety were also causes of her disability: "Without contribution to other diagnosis, such as depression and anxiety, there is no evidence . . . that [Right Hemisphere Deficit Syndrome] caused an inability to work." R.8-6, PageID#1172.

After LINA denied Harrison's administrative appeal, she filed this ERISA suit seeking an award of long-term disability benefits under 29 U.S.C. § 1132(a)(1)(B). The parties filed cross motions for judgment on the administrative record. The district court granted LINA's motion. *Harrison v. Life Ins. Co. of N. Am.*, 2020 WL 1030897, at *1 (S.D. Ohio Mar. 3, 2020). The court reviewed LINA's decision to deny Harrison's claim de novo, not with deference to LINA. *Id.* at *3–4. But it ultimately agreed with LINA that the policy's preexisting-condition limitation barred Harrison's claim because her preexisting depression and anxiety contributed to her inability to work. *Id.* at *4–5.

Harrison timely appealed. We review the district court's legal conclusions de novo. *See Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 889 (6th Cir. 2020). As for the district court's factual findings, our cases have sent mixed signals about whether we also review them de novo or only for clear error. *Id.* at 890. Because both parties agree that de novo review applies and do not suggest that we should review any part of the district court's analysis deferentially, we may safely save this tension in our caselaw for another day. *See id.*; *cf. Bruton v. Am. United Life Ins. Corp.*, 798 F. App'x 894, 901–02 (6th Cir. 2020).

II

A

We begin by framing the nature of the parties' dispute. The plan states that LINA "will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy." R.8-

7, PageID#1661. It defines "disability" to cover an employee who, "solely because of Injury or Sickness," is both "unable to perform the material duties of his or her Regular Occupation" and "unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." *Id.*, PageID#1649. The plan elsewhere defines "Sickness" as "[a]ny physical or mental illness." *Id.*, PageID#1672. In this case, Harrison suffered from many physical and mental conditions—multiple "Sicknesses" in the plan's language—when she became unable to work at Advance America in October 2015. So LINA makes no claim (at least not on appeal) that Harrison fails to qualify as disabled under the plan's definition.

Even for those who are disabled, however, the plan contains a number of limitations and exclusions that still prohibit benefits awards. LINA relied on the preexisting-condition limitation to deny Harrison's claim. This limitation bars coverage if an individual's disability was "caused" or "contributed to by" a plan-defined "Pre-existing Condition":

> The Insurance Company will not pay benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a Physician within 3 months before his or her most recent effective date of insurance.

*Id.*, PageID#1664. The parties do not dispute two important points about whether this preexisting-condition limitation applies here. Harrison concedes that her depression and anxiety qualify as preexisting conditions under the plan's definition of that phrase. And LINA does not argue that Harrison's Right Hemisphere Deficit Syndrome qualifies as a preexisting condition, perhaps because she was diagnosed with this condition only after she left Advance America. *Cf. Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 82–84 (6th Cir. 2009).

The parties' agreement on these points narrows the range of debate between them to the following overarching question: Was Harrison's inability to work (her "Disability") "caused or contributed to by" her depression or anxiety (her "Pre-existing Conditions")? If so, the preexisting-condition limitation applies, and Harrison cannot receive long-term disability benefits. If not, the preexisting-condition limitation does not apply, and Harrison may be entitled to benefits.

B

The parties' briefs dispute three specific legal issues embedded within this general question whether the preexisting-condition limitation applies. *First*, the parties dispute the proper standard of review for LINA's benefits decision. According to LINA, the district court mistakenly refused to apply deferential arbitrary-and-capricious review. LINA argues that the plan gives it discretionary authority to decide claims by requiring Harrison to provide "satisfactory proof of Disability before benefits will be paid." *Harrison*, 2020 WL 1030897, at *3 (quoting plan); *cf. Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 567 (6th Cir. 2013). According to Harrison, the district court properly applied de novo review. Even if the plan language that LINA cites could trigger deferential review, Harrison argues, the deference would apply only to LINA's decision about whether she is disabled, not its decision that the preexisting-condition limitation applies. *Cf. Anderson v. Great W. Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir. 1991).

*Second*, the parties dispute who bears the burden of proof. According to Harrison, the district court wrongly placed the burden of proof on her. *See Harrison*, 2020 WL 1030897, at *4. She argues that, under our caselaw's reading of the common law, an insurer ordinarily bears the burden of proving that a plan's exclusion applies in a particular case. *See, e.g.*, *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 385 (6th Cir. 2017); *Caffey v. Unum Life Ins. Co. of Am.*, 1997 WL 49128, at *3 (6th Cir. Feb. 3, 1997) (per curiam). According to LINA, the district court

properly placed the burden of proof on Harrison. It argues that "federal courts may not apply common law theories to alter the express terms of written benefit plans" and that various plan provisions in this case shift the burden of proof to Harrison. *Klein v. Cent. States, Se. & Sw. Areas Health & Welfare Plan*, 346 F. App'x 1, 6 (6th Cir. 2009) (citation omitted).

*Third*, the parties dispute the proper meaning of the preexisting-condition limitation. Recall that this limitation provides that LINA "will not pay benefits for any period of Disability caused or contributed to by, or resulting from a Pre-existing Condition." R.8-7, PageID#1664. According to Harrison, the district court read the phrase "contributed to by" too broadly. *See Harrison*, 2020 WL 1030897, at *4–5. She cites caselaw that has narrowly interpreted this phrase to require proof that a condition is a but-for cause of an inability to work, not simply proof that the condition worsened the inability to work. *See Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 607–09 (6th Cir. 2016). According to LINA, the district court interpreted the phrase properly. After all, "contribute to" ordinarily has a broad scope and reaches any factor that "add[s] to or exacerbate[s] something" (here, Harrison's inability to work). *McGraw-Hill's Dictionary of American Idioms and Phrasal Verbs* 122 (2005).

C

Ultimately, we need not decide any of these legal issues. Even if we resolved each of them in Harrison's favor—that is, even if we (1) applied de novo review to LINA's decision, (2) placed the burden of proof on LINA to establish that the preexisting-condition limitation applies, and (3) interpreted the phrase "contributed to by" narrowly to require but-for causation—Harrison still must lose. The evidence in the record shows that depression and anxiety were but-for causes of Harrison's inability to work (and so of her "Disability," to borrow the plan's language). We thus opt to avoid these legal questions and resolve Harrison's claim on this narrower ground.

Harrison argues that her depression and anxiety were not but-for causes of her inability to work because her Right Hemisphere Deficit Syndrome would have *independently* prohibited her from working even if she did not suffer from depression and anxiety. The evidence indisputably proves the contrary. When Harrison began working at Advance America in September 2014, all agree that she suffered from depression, anxiety, and Right Hemisphere Deficit Syndrome. Yet she was initially capable of working at Advance America for over a year until October 2015. She obviously did not suffer from a disability (an inability to work) during the time that she was actually working. What changed? What caused her to no longer be able to work in October 2015? Nothing in the record suggests that her Right Hemisphere Deficit Syndrome got worse. Instead, the record shows—through statements from Harrison and two of her doctors—that her depression and anxiety worsened as a result of the stressful nature of her job. The worsening of these preexisting conditions was, "so to speak," the "straw that broke the camel's back" because it triggered Harrison's inability to work. *Burrage v. United States*, 571 U.S. 204, 211 (2014).

Consider, first, what Harrison's doctors said. They identified the worsening of her depression and anxiety as the source of her inability to work. One doctor's letter in support of Harrison's claim connected Harrison's difficulty working to her depression and anxiety:

> Harrison's level of depression and anxiety further negatively impacts her already compromised cognitive skills. As her level of stress increases, this contributes to worsened symptoms of depression and anxiety. This, in turn, exacerbates her documented cognitive limitations which reduces her functional abilities and makes it more difficult to successfully complete work duties. While Ms. Harrison's cognitive limitations related to her diagnosis of a non-verbal learning disability/right hemisphere deficit syndrome are developmental in nature, these limitations are currently being worsened by her depression/anxiety which is resulting, in part, from work-related stressors.

R.8-2, PageID#272. Writing a similar letter in support, another doctor noted that, during the time Harrison was employed at Advance America, her anxiety and depression had "become more

prevalent particularly in her work setting, affecting her productivity substantially[.]" *Id.*, PageID#275. That doctor added that, when Harrison "began to be bullied terribly at work[,] her depression and anxiety rose to an alarming level making it very difficult to treat." *Id.*

Harrison herself confirmed the narrative painted by her doctors. In a letter written in support of her appeal of LINA's initial denial of her claim, Harrison stated that her job at Advance America "caused" her "depression, tension headaches, and ADD to get out of control." *Id.*, PageID#307. She added that those "symptoms all continue to get worse and that is why I have been off of work." *Id.* So Harrison connected her increased stress at work to her worsening mental health and then connected her worsening mental health to her inability to work. This record thus leaves no doubt that Harrison's depression and anxiety were but-for causes of her disability.

In response, Harrison notes that if we agree with her specific legal points (about the burden of proof and the causation test), we should remand to the district court to reconsider her claim under the proper standards. *See, e.g.*, *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 298 (6th Cir. 2011). But Harrison concedes that we need not do so: "The Court is free, of course, to reach a decision on the merits[.]" Reply Br. 29. She also concedes that the judiciary's consideration of her claim must stick to the administrative record even if it reviews LINA's decision de novo. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). And she concedes that we review the district court's decision de novo. Yet she fails to cite anything in the record showing that her depression and anxiety were *not* but-for causes of her inability to work. "Under the circumstances of this case," then, "remand would serve no purpose" because the "necessary result . . . is the same as that reached by the district court" even if we accept Harrison's claimed legal errors. *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990); *see,*

*e.g.*, *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631–32 (4th Cir. 2010); *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808 (6th Cir. 2002).

As a final matter, Harrison makes two other legal arguments about the proper interpretation of the plan. We need not address these arguments either given our conclusion that her depression and anxiety caused her disability. She notes that the plan uses the term "Sickness" both when defining the term "Disability" and when defining the phrase "Pre-existing Condition." R.8-7, PageID#1649, 1664. According to Harrison, this symmetry means that the physical or mental illness (the "Sickness") that causes her inability to work (her "Disability") must be the *same* illness that is her "Pre-existing Condition." Even if her reading is correct, however, her depression and anxiety were *both* but-for causes of her inability to work *and* preexisting conditions. This reading thus would do Harrison no good on the facts of this case.

The same is true of Harrison's other legal argument. The plan defines preexisting condition to mean "any Injury or Sickness *for which* the Employee" received treatment at a specific time. *Id.*, PageID#1664 (emphasis added). According to Harrison, the phrase "for which" signals that a preexisting condition must have been *diagnosed* at that time; it is not enough that a plan participant suffer *symptoms* of a condition diagnosed later. *Cf. Mitzel*, 351 F. App'x at 82–84. Harrison argues that this reading means that her Right Hemisphere Deficit Syndrome does not qualify as a preexisting condition because it was diagnosed too late. But she conceded at oral argument that her depression and anxiety were preexisting conditions because they had been diagnosed at the proper time. Oral Arg. 3:40–59. And because these conditions caused her inability to work, the preexisting-condition limitation bars her claim to benefits.

We affirm.